In the Matter of the Tax Indebtedness of Dell W. CARLSON and Robert Torres.

UNITED STATES of America, Petitioner-Appellant,

v.

UNITED STATES DISTRICT COURT FOR the DISTRICT OF COLORADO, Honorable Richard P. Matsch, United States District Judge, Respondents.

Nos. 77–1861, 77–1862 and 77–2078.

United States Court of Appeals, Tenth Circuit.

Submitted March 16, 1978.

Decided July 11, 1978.

Leonard J. Henzke, Jr., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Dept. of Justice, Washington, D. C., on brief), for appellant; Joseph F. Dolan, U. S. Atty., Denver, Colo., of counsel.

Joseph H. Thibodeau and Michael J. Abramovitz, Denver, Colo. (Vivian T. Martinez, Denver, Colo., on brief), for the Colorado Bar Association.

Before McWILLIAMS, BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

In these four consolidated actions the common questions presented involve important issues relating to the administration of internal revenue laws. They arise from the applications of the United States Attorney to the District Court for *ex parte* orders granting officers of the Internal Revenue Service (IRS) general authority to enter private property for the purpose of searching for and seizing property of the taxpayers. The applications were filed following determinations by the IRS that levies were necessary in order to effect the collection of back taxes from the taxpayers. The tax liabilities of three of the taxpayers have been satisfied and only the case and judgment involving appellee Dell W. Carlson remains in dispute.

In each of the consolidated cases, the applications were made only after all of the pre-levy administrative processes directed by law had been pursued without benefit of

tax payments, *to-wit*, the tax assessments, demand for payment of the taxes assessed and refusal by the taxpayer to pay.

The affidavit of Revenue Officer Robert S. Ely, Jr. of the Denver District Collection Division, IRS, was submitted to the District Court in support of the application filed by the United States Attorney for "tax entry" orders in the case involving appellee Carlson. The affidavit stated that Carlson had failed to pay income tax and Federal Insurance Contribution Act (Social Security) withholding taxes, penalties and interest assessed for the fourth quarter of 1975, due in early 1976; that on February 8, 1977, Revenue Officer Ely visually inspected Carlson's "Our Old Corner Inn" bar in Denver where he observed assets including furniture, bar fixtures, liquor, equipment and cash; that Carlson had refused to allow the revenue officer to enter the bar premises; and that Carlson had refused to tender payment.

■ A general review of some of the standard, long-recognized tax procedures may be helpful. A taxpayer normally pays his tax when he files his return. The return is considered to be a self-assessment. Upon receipt by IRS, a formal assessment in the amount reflected in the return is entered on the rolls. Should a taxpayer fail to file a return or tender payment, or if the amount shown on the return is investigated and found deficient, the taxpayer is customarily notified and allowed a series of administrative conferences and appeals with the IRS. Following these appeals, in income, estate, and gift tax cases the taxpayer may seek review in the Tax Court of any final tax declared deficient and owing by IRS. In the course of administrative proceedings, IRS generally does not enter an immediate assessment on the rolls. Such an assessment would allow an immediate forced collection—such as a levy—to be effected. In income, estate and gift tax cases, a "notice of deficiency" *must* be sent to the taxpayer so that the taxpayer may seek Tax Court review and during such proceedings an assessment may be made and a levy effected only upon a determination that collection is in "jeopardy." See generally, 9 Merten's,

*Law of Federal Income Taxation* (Zimet Rev.), §§ 49.100–49.148. Once a regular or jeopardy assessment has been formally entered, 26 U.S.C.A. § 6331 authorizes IRS to collect the tax by executive seizure—"by levy upon all property and rights to property" belonging to the taxpayer. After voluntary or involuntary payment of the assessment has been made, the taxpayer is permitted, under 28 U.S.C.A. § 1346, to challenge the assessment by suing for refund in a federal district court or in the Court of Claims.

■ Thus, the Internal Revenue Code, hereinafter referred to as Code, provides that delinquent taxes and tax penalties shall be assessed, collected and paid by administrative means. The right of the United States to collect its internal revenue by summary administrative proceedings has been long recognized. 26 U.S.C.A. §§ 6301, 6302(a), 6302(b), 6303; *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). The subject of federal taxes, including remedies for their collection, has always been conceded to be the paramount right of the federal government independent of the legislative action of the states. *United States v. Union Central Life Ins. Co.*, 368 U.S. 291, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961). The existence of the power of the federal government to levy is essential to our self-assessment tax system in that it encourages voluntary compliance with the tax laws and furthers the collection of taxes described in *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), as "the life-blood of government, and their prompt and certain availability an imperious need."

■ The Code creates a general lien for unpaid federal taxes upon "all property and rights to property, whether real or personal" belonging to the delinquent taxpayer. 26 U.S.C.A. § 6321; *Detroit Bank v. United States*, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304 (1943). In determining the extent of "property and rights to property" to which a federal tax lien attaches, state law controls. *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960);

*Kirby v. United States,* 329 F.2d 735 (10th Cir. 1964). § 6321, *supra,* creates a federal tax lien on property or rights to property "belonging" to the person liable therefore and it does not extend to the property of others. *United States v. Kaufman,* 267 U.S. 408, 45 S.Ct. 322, 69 L.Ed. 685 (1925).

▮ The Code provides that if any person liable to pay any federal tax refuses or neglects to pay it within ten days after notice and demand, the Secretary or his delegate shall collect the tax and necessary expenses by levy upon all property and rights to property not otherwise exempt from levy belonging to such person or in which there is a lien for payment of the tax; furthermore, if there is a finding that the collection of the tax is in jeopardy, notice and demand for immediate payment may be made and, upon failure or refusal to pay, collection of the tax shall be lawful without regard to the ten day period. 26 U.S.C.A. § 6331(a). The Congress has empowered the Secretary to enforce collection of taxes by the summary administrative method of distraint which has been held not to amount to a denial of due process of law. *Springer v. United States,* 102 U.S. 586, 6 L.Ed. 253 (1880). Summary proceedings have been held a constitutionally valid expedient for the collection of taxes necessary for the very existence of government. *United States v. Manufacturers Trust Co.,* 198 F.2d 366 (2nd Cir. 1952). A levy under the statute does not, accordingly, require a prior judgment; all that is required is an assessment.

Federal district courts have original jurisdiction of any civil action arising under any act of Congress providing for internal revenue. 28 U.S.C.A. § 1340. The Code expressly confers jurisdiction upon federal district courts to make and issue in civil actions, writs and orders of injunction ". . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C.A. § 7402(a).

Prior to the decision by the Supreme Court in the case of *G. M. Leasing Corp. v.*

*United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the IRS had for years pursued the administrative practice, pursuant to 26 U.S.C.A. § 7301(a), of seizing any property found in the possession, custody or control of the person against whom the tax had been imposed. Following seizure, the property was declared forfeited to the United States.

▮ The Supreme Court, in *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), spoke of the exceptions to the Anti-Injunction Act's (26 U.S.C.A. § 7421(a)) prohibition of taxpayer suits to restrain IRS administrative assessment or collection of federal taxes. The Court held that an injunction may be obtained if (1) it is clear that under no circumstances the government can ultimately prevail, and (2) it is shown that the taxpayer would otherwise suffer irreparable injury. If a taxpayer's federal district court action seeking injunctive relief from the IRS's summary seizure of the taxpayer's assets pursuant to jeopardy assessments under 26 U.S.C.A. §§ 6213, 6331 and 6861, the taxpayer is not required to plead specific facts establishing that the IRS cannot ultimately prevail; rather, the taxpayer must plead and prove facts establishing that his remedy in the Tax Court under the Code or in a refund suit is inadequate to repair any injury he may sustain by the erroneous assessment or collection of the asserted tax liability. Upon such proof, the IRS is required to litigate the issue as to whether its assessment has a basis in fact. The collection of the taxes will not be restrained unless the District Court is persuaded that the IRS will under no circumstances prevail.

This court has held that the purpose of the Anti-Injunction Act is to give the United States a free hand in assessing and collecting taxes claimed to be due without intervention on the part of the courts, and to limit determination of disputed sums to suit for refund. *Cattle Feeders Tax Committee v. Shultz,* 504 F.2d 462 (10th Cir. 1974); 26 U.S.C.A. § 7421(a). *See also: Kirtley v. Bickerstaff,* 488 F.2d 768 (10th

Cir. 1973), *cert. denied*, 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974); *Williams v. Wiseman*, 333 F.2d 810 (10th Cir. 1964). This is in keeping with the "pay and sue" rule of 26 U.S.C.A. § 7421(a) which provides that no suit for the purpose of restraining assessment or collection of any tax shall be maintained in any court and that the taxpayer must first pay an assessment before he seeks judicial review thereof. *Westgate—California Corp. v. United States*, 496 F.2d 839 (9th Cir. 1974).

In *G. M. Leasing Corp. v. United States*, *supra*, the Supreme Court altered the long standing IRS administrative practice in proceedings to collect taxes "by levy upon [following entry, search and seizure] all property and rights to property" belonging to a person who neglects or refuses to pay "any tax or 'on which there is a lien . . . for the payment of such tax' " as authorized pursuant to § 6331(a), *supra*. Prior to *G. M. Leasing*, IRS agents, *under administrative sanction*, proceeded to "levy" upon personal property of the delinquent taxpayer by service of forms of levy or notice of levy following entry and to then physically seize the property by means of "the power of distraint and seizure by any means" as prescribed in § 6331(b), *supra*, and 26 U.S.C.A. § 7701(a)(21). *G. M. Leasing* held that § 6331(b), *supra*, did not, as urged by IRS and as upheld by this court as reported in 514 F.2d 935 (10th Cir. 1975), authorize warrantless search and seizure under the statutory power to collect the tax by levy, including the power of "seizure by any means." Even though the Supreme Court accepted this court's determination that there was probable cause to believe that assets held by petitioner were properly subject to valid assessments and levies and also properly subject to seizure in satisfaction of the assessments, still the high Court held that the warrantless intrusion into petitioner's private offices where a search and seizure of books and records was undertaken, without consent, was violative of the Fourth Amendment. The IRS had urged justification of the intrusion on the ground that the petitioner's assets were seizable to satisfy tax assessments. The Supreme Court said, *inter alia* :

The respondents [IRS] argue[s] that there is a broad exception to the Fourth Amendment that allows warrantless intrusions into privacy in the furtherance of enforcement of the tax laws. We recognize that the "Power to lay and collect Taxes" is a specifically enunciated power of the Federal Government, Const., Art. I, § 8, cl. 1, and that the First Congress, which proposed the adoption of the Bill of Rights, also provided that certain taxes could be "levied by distress and sale of goods of the person or persons refusing or neglecting to pay." Act of Mar. 3, 1791, c. 15, § 23, 1 Stat. 204. This, however, relates to warrantless seizures rather than to warrantless searches. It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer. 429 U.S., at 354, 97 S.Ct., at 629.

In *G. M. Leasing Corp.*, *supra*, the Court opined and held:

The intrusion into petitioner's office is therefore governed by the normal Fourth Amendment rule that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Municipal Court*, 387 U.S. [523], at 528–529 [87 S.Ct. 1727, 18 L.Ed.2d 930].

As an alternative to their argument that a new exception to the warrant requirement should be recognized, the [IRS] assert that the facts of this case bring it within the "exigent circumstances" [such as "hot pursuit," "plain view," or "pursuant to an arrest"] exception to the warrant requirement. The agents' own actions, however, in their delay for two days following their first entry, and for more than one day following the observation of materials being moved from the

office, before they made the entry during which they seized the records, is sufficient to support the District Court's implicit finding that there were no exigent circumstances in this case.

We therefore conclude that the warrantless entry into petitioner's office was in violation of the commands of the Fourth Amendment.

429 U.S., at pp. 358, 359, 97 S.Ct., at p. 631.

The applications filed by the United States Attorney in the instant case (on behalf of IRS) with the United States District Court for *ex parte* search and seizure Writs of Entry, Orders and/or Warrants were made following the *G. M. Leasing Corp.,* supra, decision and in compliance with IRS guidelines promulgated after *G. M. Leasing* was handed down.

The District Court, by Memorandum Order and Judgment, denied the IRS applications for search warrants. The court acknowledged that *G. M. Leasing Corp.,* supra, does require that the IRS obtain a warrant from a judicial officer authorizing entry and search in order to effect seizure of property of a taxpayer in satisfaction of unpaid taxes. Even so, the District Court observed that the Code provides for the assessment and collection of taxes by IRS without the need of judicial enforcement [just as the Code did when the *G. M. Leasing Corp.,* supra, decision was rendered] and that, notwithstanding this legislative authorization, the Supreme Court:

> In holding that a warrant should have been obtained before the entry was effected, . . . did not indicate or suggest any authority or procedure for the issuance of such warrants by any judicial officer.

The Internal Revenue Code provides for the assessment and collection of taxes by the Internal Revenue Service, an executive agency, without any need for a judicial enforcement proceeding. The applications which are now before me seek nothing more than the imprimatur of my judicial authority on the administrative actions of revenue officers, not merely to seize property in satisfaction of unpaid taxes but to enter and search private premises to effect such seizure.

I cannot provide that imprimatur if it is beyond the limited authority and jurisdiction of this Court to do so. The Supreme Court in *G. M. Leasing, supra,* certainly implies that someone has jurisdiction to issue the kind of warrant here sought, but that opinion nowhere indicates the statutory source of the jurisdictional grant. The government relies on 24 U.S.C. § 7402(a), which is a grant of jurisdiction to the district court to issue writs and orders in aid of the enforcement of the internal revenue laws. With all due respect to the contrary view of two circuits of the Court of Appeals, *United States v. Mellon Bank, N.A.,* 521 F.2d 708 (3d Cir. 1975) and *United States v. First National City Bank,* Civil Nos. 75–6007, 6008 [568 F.2d 853] (2d Cir., Feb. 4, 1977), I interpret the language of that statute as authorizing writs and orders only in the context of plenary civil proceedings, not in the context of an *ex parte* application. The issuance of an *ex parte* order allowing the invasion of a citizen's privacy in his home or business is by its very nature an extraordinary exercise of governmental authority. If Congress had chosen to vest that authority in the district courts or any other judicial tribunal for the purpose of facilitating collection of taxes, one would think that the jurisdictional grant would be more explicit than the general language of Section 7402(a). Compare Fed.R.Crim.P. 41, which specifically grants authority to judges and federal magistrates to issue criminal search warrants.

Assuming, however, that Section 7402(a) or some other statute were sufficient to grant this Court jurisdiction, I do not think the applications presented here sufficiently comport with the requirements of the Fourth Amendment for issuance of a warrant.

First, the Fourth Amendment requires a showing of "probable cause" before a warrant can issue. In the context of

enforcement of the criminal laws under Fed.R.Crim.P. 41 and 18 U.S.C. § 3103(a), [3103a], the concept of probable cause has been developed in an extensive body of case law. In the present context, however, what would constitute probable cause is much less clear. As Judge Gurfein lamented in *First National City Bank, supra,*

> [T]he majority sustains the broad order below on the curious ground that "probable cause" was shown. But they do not tell us "probable cause" to believe what. (at 6152 [568 F.2d at 860])

The government contends,

> All that need be shown is that an assessment has been made, that the taxpayer has been given notice of the assessment, that a demand for payment has been made, that the taxpayer has refused or neglected to pay the tax, and that there is a factual basis for concluding that the premises to which entry is sought contains property that is subject to levy for the taxes due. (at 6, *Ichiban at Vail* memorandum)

Upon these grounds alone, I would be most reluctant in the absence of clear case authority to give blanket authority to federal tax officers to invade the privacy of these citizens.

> . . . the form of order tendered is itself clearly prohibited by the Fourth Amendment. I am asked to authorize revenue officers "to enter the premises described and to make such search as is necessary in order to levy and seize, pursuant to Section 6331 of the Internal Revenue Code of 1954." . . . The failure of the application and order to describe the things to be seized is a violation of the express language of the Fourth Amendment that no warrant shall issue without "particularly describing the place to be searched, and the persons or things to be seized."

> Finally, . . . I would be reluctant (assuming jurisdiction) to issue such orders under the present procedural circumstances, wherein the taxpayers have been given no notice and no opportunity to contest the allegations of the affidavits

submitted to this Court or the legality of the orders requested. . . .

[R., Vol. I, pp. 5–8.]

There are two primary issues on appeal. IRS contends that the District Court erred in (1) finding and concluding that it lacked jurisdiction to issue the "search warrant" or entry order, and (2) finding that, assuming that the court did have proper jurisdiction to issue the entry order (or warrant), the IRS had failed to (a) demonstrate sufficient probable cause therefor and (b) the application for the entry order was deficient in its failure to adequately describe the place to be searched and the property to be seized.

■ An issue which seems to have largely "evaporated" was whether the district court's judgment denying the IRS application is a "final decision" vesting appellate jurisdiction pursuant to 28 U.S.C. § 1291 and/or whether the matter is now "moot" because Carlson's business successor-in-interest has voluntarily paid all of the taxes, penalties and interest of taxpayer Carlson.

In *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court observed that, "No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future." In our view, the compelling nature of the issues presented here in relation to the enforcement of the internal revenue laws, the attendant needs of the federal government and the important private rights involved, dictate the conclusion that the matters before us are too important to be denied effective review. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We recognize that the *Cohen* doctrine has been sparingly applied and confined to a small class of cases, and properly so. Courts have recognized, however, that the finality requirement of 28 U.S.C. § 1291 is to be given a practical, rather than a technical construction. *Matthews v. IMC Mint Corporation,* 542 F.2d 544 (10th Cir. 1976); *Litton Sys-*

*tems, Inc. v. Southwestern Bell Tel. Co.*, 539 F.2d 418 (5th Cir. 1976); *Rodgers v. United States Steel Corp.*, 541 F.2d 365 (3rd Cir. 1976). We hold that jurisdiction vests pursuant to 28 U.S.C.A. § 1291.

## I.

IRS contends that the district court erred in holding that it had no jurisdiction to entertain the IRS's application for the tax entry order requested pursuant to the Fourth Amendment requirement set forth in *G. M. Leasing Corp., supra.* We agree.

 We hold that the district court is vested with jurisdiction under 26 U.S.C. § 7402(a) to enforce IRS levies by summary, *ex parte* proceedings. In our view, § 7402(a), *supra*, cannot be so narrowly construed as to authorize only writs and orders ancillary to a plenary civil action. We agree with the · holdings in *United States v. First National City Bank*, 568 F.2d 853 (2nd Cir. 1977) and *United States v. Mellon Bank, N.A.*, 521 F.2d 708 (3rd Cir. 1975).

In *First National City Bank* the court was concerned with the issue whether the taxpayer's constitutional rights require that as a pre-seizure remedy he be granted leave to intervene in the summary enforcement proceedings initiated by the United States attorney's application to the district court for an entry order pursuant to § 7402(a) requiring two banks wherein taxpayer kept safety deposit boxes to disclose their contents to IRS after the banks had refused IRS access thereto. The court said, *inter alia:*

> The language of this statute is broad and clear. In addition to authorizing writs and orders ancillary to civil actions, it gives the district courts jurisdiction to issue "such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." We decline to construe such a broad statutory mandate so restrictively as to add nothing to the power conferred by the All Writs Act, 28 U.S.C. § 1651 (1970). We hold, as the Third Circuit did

in *United States v. Mellon, Bank, N.A.*, 521 F.2d 708, 710–11 (3 Cir. 1975) (related case), that § 7402(a) authorized the summary enforcement proceedings in the district court.

\*　\*　\*　\*　\*　\*

In order to focus on the precise due process claim raised, it is important to bear in mind what is *not* involved. The issue here is whether the taxpayer has a right to a hearing *after* his property has been seized. Rather, the issue is whether he is entitled to litigate his claims *before* the government has obtained possession of the contents of his safe deposit box.

. . .

In *Commissioner [of Internal Revenue] v. Shapiro*—a post-seizure injunction action—the Court stated that due process required "some kind of predeprivation or *prompt post-deprivation* hearing." 424 U.S. at 629, [96 S.Ct. 1062] (emphasis added). The Court again noted:

> "We have often noted that, in resolving a claimed violation of procedural due process, a careful weighing of the respective interests is required, *Goss v. Lopez*, 419 U.S. 565, 579 [95 S.Ct. 729, 42 L.Ed.2d 725] (1975); and we have noted that the Government's interest in collecting the revenues is an important one, *Fuentes v. Shevin*, 407 U.S. 67, 92 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972). *This interest is clearly sufficient to justify seizure of a taxpayer's assets without a pre-seizure hearing, Fuentes v. Shevin, supra*, and to remove any need to subject the Commissioner to the burden of an inquiry into the basis for his assessment absent factual allegations of irreparable injury by the taxpayer. *Phillips v. Commissioner [of Internal Revenue]*, 283 U.S. 589, 595, 596–97 [51 S.Ct. 608, 75 L.Ed. 1289], (1931) . .." Id. at n. 12 (emphasis added).

Under *Shapiro* the taxpayer is entitled to an initial hearing on his claims before a subsequent determination in the Tax Court or in a suit for a refund, "at least where irreparable injury may result from

a deprivation of property pending final adjudication of the rights of the parties . . .." 424 U.S. at 629 & n. 12 [96 S.Ct. 1062]. Meissner's remedy for alleged deprivation of his property rights is in a post-seizure hearing of the sort described in *Shapiro*.

We hold that the due process clause does not entitle Meissner under the circumstances of this case to intervene in the pre-seizure enforcement proceedings and thus to impede the government's efforts to obtain possession of the contents of the safe deposit box pursuant to its jeopardy assessment.

Meissner's principal claim appears to have been that the search of his safe deposit box violated his Fourth Amendment rights. Granted that the search did come within the scope of the Fourth Amendment, we do not believe Meissner's intervention in the summary proceedings was required to protect his Fourth Amendment rights. We hold that there was sufficient probable cause for the district court to order that the bank allow the government to search the safe deposit box.

No one would contend that a suspect has a right to intervene in opposition to an application by a police officer for a search warrant. The policies favoring expeditious tax enforcement procedures are as compelling as the need to effect a speedy search of a suspect's premises. *To allow a taxpayer to tie up the initial enforcement proceedings after he has been given notice of the jeopardy assessment most assuredly would subvert the statutory purpose of the jeopardy assessment provisions. By delaying enforcement a taxpayer could secrete or dissipate what assets he had left.* The government's interests moreover cannot be protected adequately merely by sealing the safe deposit box. The government must be able to search the contents of the box to determine the value if what is there *and* to learn what other assets the taxpayer may have elsewhere. We refuse to sanction the impeding of these investigatory functions and the concomi-

tant frustration of the jeopardy assessment procedure which would result from intervention by the taxpayer in the pre-seizure enforcement proceedings.

The "warrant preference rule" requires no more than that a detached magistrate determine whether there is sufficient probable cause for the search. *Mancusi v. DeForte*, 392 U.S. 364, 370–72, [88 S.Ct. 2120, 20 L.Ed.2d 1154] (1968); *Camara v. Municipal Court*, 387 U.S. 523, [87 S.Ct. 1727, 18 L.Ed.2d 930] (1967); *Johnson v. United States*, 333 U.S. 10, [68 S.Ct. 367, 92 L.Ed. 436] (1948). That is precisely what was done here. The government's representations in support of its petition for enforcement, coupled with Meissner's own admissions in his motion papers, provided sufficient probable cause for the court to authorize the search of Meissner's safe deposit box. Although Meissner challenged the amount of the deficiencies assessed, he admitted that he had not properly computed his taxes. He did not deny that he owed substantial back taxes . . .. [There was] sufficient reason to believe that the collection of deficiencies against Meissner might be in jeopardy.

Beyond the protection afforded Meissner by the presentation of the government's petition to the district court in the summary enforcement proceedings, he is not foreclosed from objecting in subsequent civil or criminal proceedings to the use of evidence improperly obtained. This protection is no less than that required in the context of searches for other purposes.

Finally, Meissner relies on *Reisman v. Caplin*, 375 U.S. 440, [84 S.Ct. 508, 11 L.Ed.2d 459] (1964), in support of his contention that he was entitled to intervene in the summary enforcement proceedings to assert his Fourth Amendment claim. In *Donaldson v. United States*, 400 U.S. 517, 529, [91 S.Ct. 534, 27 L.Ed.2d 580] (1971), the Court pointed out that the language in *Reisman* with respect to a taxpayer's intervention "is permissive only and is not mandatory." The Court

in *Donaldson* also indicated that intervention would be appropriate only in very limited circumstances, such as where a party's rights are inadequately protected otherwise and where they outweigh the government's interest in an expedited determination. Id. at 529–30 & n. 12, [91 S.Ct. 534.] That is not the situation here. (Emphasis supplied.)

568 F.2d at pp. 855–859.

In *United States v. Mellon Bank, N.A., supra,* the government, pursuant to 26 U.S.C. § 7402, filed suit against Mellon Bank to enforce a jeopardy assessment against the assets of taxpayer Meissner contained in a safe deposit box in the Bank's possession. The district court granted Meissner's petition to intervene in order to contest the government's petition. After denying several motions filed by Meissner, the court ruled that the Anti-Injunction Act, 26 U.S.C. § 7421, divested it of jurisdiction to consider Meissner's counterclaim. Thereupon, in summary fashion, the court granted the government's motion to enter the safe deposit box and seize the contents. The cause was reversed and remanded. The appellate court concluded that when the district court exercised its discretion and permitted taxpayer Meissner to intervene it then had jurisdiction to consider his counterclaim, notwithstanding the Anti-Injunction Act, inasmuch as Meissner did not sue to enjoin the assessment or collection of the tax. On the appeal taxpayer Meissner argued, *inter alia,* that the district court did not have power pursuant to 26 U.S.C. § 7402 to issue the order authorizing the government, in a summary proceeding, to enter his safety deposit box and seize the contents in satisfaction of the jeopardy assessment. With specific reference thereto, the appellate court stated, *inter alia*:

26 U.S.C. § 7402(a) gives the district court jurisdiction to issue orders "necessary or appropriate for the enforcement of the internal revenue laws." When the United States attorney petitioned the district court for an order seeking to open Meissner's safe deposit box the district court clearly had jurisdiction under § 7402(a). The order the government

sought was necessary and appropriate to enforce the government's jeopardy assessment under 26 U.S.C. § 6861 against a third party bank in possession of the taxpayer's property. (Footnotes omitted.) 521 F.2d, at 710.

Meissner challenged the government's requested § 7402(a), *supra,* order as unnecessary and inappropriate since the government revenues were adequately protected by sealing the safe-deposit box. The court, by footnote, rejected this contention:

. . . This argument is specious since the levy statute, 26 U.S.C. § 6331, *supra* n. 10 specifically gives the United States power to seize and distrain items subject to levy. Also, the secretary is given power to sell seized items which are likely to "become greatly reduced in price or value." 26 U.S.C. § 6336. *See*: 26 U.S.C. § 6863(b)(3)(B). The United States cannot seize or sell items which are beyond its reach in a safe-deposit box.

521 F.2d, footnote at p. 712.

This court withheld rendition of this opinion following its submission awaiting an opinion of the United States Supreme Court involving a challenge to a provision of the Occupational Safety and Health Act which empowers agents of the Secretary of Labor to search work areas of an employment facility. No search warrant or other process is expressly required by the Act. That opinion was rendered May 23, 1978 in the case entitled *Marshall, Secretary of Labor v. Barlow's, Inc.,* —— U.S. ——, 98 S.Ct. 1816, 56 L.Ed.2d 305, on appeal from a three-judge District Court decision rendered in the District of Idaho in 1976. Pertinent to our discussion here, we believe that *Marshall v. Barlow's, Inc.* clearly recognized the power and authority of a federal district court to issue ex parte search or entry orders for federal revenue purposes:

. . . Some statutes already envision resort to federal court enforcement when entry is refused, employing specific language in some cases [18] and general language in others.[19] [Footnote 18 omitted.]

[Footnote] [19] . . . The Internal Revenue Code, whose excise tax provisions requir-

ing inspections of businesses are cited by the Secretary, provides "The District Courts . . shall have such jurisdiction to make and issue in civil actions writs and orders of injunction . . . and such other orders and processes, and to render such . . . decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

—— U.S. at ——, 98 S.Ct. at 1825 (1978).

\* \* \* \* \* \*

We thus hold and conclude that the district court erred in finding that it was not authorized to issue an ex parte search and/or entry order pursuant to 26 U.S.C. § 7402(a).

There is no discussion in either *United States v. First National City Bank, supra,* or *United States v. Mellon Bank, N.A., supra,* concerning deficiencies in the government's application/processes meeting probable cause requirements. We thus assume that these requirements were met, as surely they had to be in order to support the issuance of a search warrant.

We are further inclined to believe, without here deciding, that 28 U.S.C. § 1345 also grants jurisdiction in the district court for governing the issuance of the administrative entry order with its attendant power of search and seizure of property of the taxpayer. This is so, in our view, by reason of the broad jurisdictional language extending to all "civil actions, suits, or *proceedings* commenced by the United States." (Emphasis supplied.)

IRS contends that the All Writs Act and 28 U.S.C. § 1356 also vest jurisdiction in the district courts authorizing issuance of the subject entry orders. We do not decide this matter.

## II.

The IRS contends that the district court erred in finding that IRS had failed to make the minimum Fourth Amendment showings of "probable cause" and "particularity" of the "place to be searched and the things to be seized."

The IRS argues that the district court erred in applying a quasi-criminal probable cause standard, rather than the more general administrative standard uniformly applied by courts in administrative search and seizure cases as recognized in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). IRS contends:

. . . the revenue officer's affidavit established that taxes had been assessed against taxpayer, that taxpayer had refused to pay such taxes, and that the officer's visual inspection had revealed valuable assets of taxpayer on his private business premises. It is hard to determine what additional allegations would be necessary, and the District Court did not state what was lacking. In numerous Occupational Safety and Health Act, tax and other administrative search and seizure cases, administrative warrants have been issued based on much less specific facts.

The District Court also erred in holding that the entry order papers did not sufficiently describe the places to be searched and the items to be seized. All the papers gave the street address and description of taxpayer's business (a bar), and that has uniformly been held sufficient.

The affidavit, moreover, described in detail the items to be seized; if the District Court thought such description should be incorporated in the entry order, he should have incorporated the affidavit therein. In any event, the proposed order provided that the officer may "levy and seize, pursuant to [Code] Section 6331." The latter statute authorizes seizure of "all property and rights to property \* \* belonging to" the taxpayer (with certain statutory exceptions). The underlying Regulations and procedural rules set forth detailed exceptions, procedures, and limitations respecting the officers' power and authority. In similar circumstances, the courts have held that reference to the statute constitutes a sufficient description of the items to be seized, and that the rules, Regulations, and specific items need not be set forth in the Fourth Amendment order.

[Brief of Appellant, pp. 11, 12.]

The Supreme Court, in *G. M. Leasing Corp., supra,* referred to the Fourth Amendment warrant requirements in relation to the rule laid down in *Camara v. Municipal Court*:

The intrusion into petitioner's office is therefore governed by the normal Fourth Amendment rule that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Municipal Court,* 387 U.S., at 528, 529, [87 S.Ct. 1727 at 1731]. 429 U.S., at 358, 97 S.Ct., at 631.

*Camara v. Municipal Court, supra,* involved a challenge by appellant Camara to the attempt by city building inspectors to effect a warrantless entry and inspection of ground-floor quarters of an apartment unit which he leased to others for residential occupancy. The City of San Francisco ordinance required that the city's Department of Health conduct routine annual inspections of rental units for possible violations of the city's Housing Code. It specifically authorized the proper employees of the city's agencies to enter such premises at all "reasonable times." When Camara refused the inspectors access to his apartment without a search warrant, he was charged with violation of the Code. Throughout the litigation, Camara argued that the City's Code was contrary to the Fourth Amendment and the Fourteenth Amendment in that it authorizes municipal officials to enter a private dwelling without a search warrant and without probable cause to believe that a violation of the Housing Code exists therein. The Supreme Court overruled its prior decision in *Frank v. Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), wherein the court had held that an inspection by a municipal health inspector did not constitute a "search" within the meaning of the Fourth Amendment. The *Camara* court held that administrative searches of a personal or private residence, absent emergency requirements mandating immediate access, are "significant intrusions" involving Fourth Amendment interests and may, in fact, constitute a "search" within the meaning of the Fourth Amendment, at least where such inspections are made pursuant to fire, health or housing codes enforceable by criminal processes. In *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court extended the *Camara* holding to those portions of commercial premises which are not open to the public. Both *Camara* and *See v. City of Seattle* were recognized to be viable, alive and well in *G. M. Leasing, supra.* Significantly, however, none of these opinions identify the specifics of "probable cause" requirements in support of search warrants in furtherance of administrative processes authorized by statute.

■ What is not involved here, in the "probable cause" meaning is that degree of "probable cause" required to support a criminal search warrant under the standards of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See also*: Fed. R.Crim.Proc., rule 41(c), 18 U.S.C.A.

■ The guiding rule in any and all "probable cause" settings under the Fourth Amendment is that the affidavits for search warrants must be treated by the courts in a common sense and realistic manner, and warrants issued pursuant thereto are not to be given a hypertechnical interpretation. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Holliday,* 474 F.2d 320 (10th Cir. 1973).

In view of the fact that the *G. M. Leasing, supra,* court identified IRS entries into private premises in furtherance of tax seizure without benefit of a "valid search warrant" as a "warrantless invasion of privacy" we elect to no longer employ the IRS term "entry order" but, instead, the district court's reference to the need for a "warrant."

■ The district court recognized that a showing of "probable cause" under the Fourth Amendment in the context of enforcement of the criminal laws under Fed.

R.Crim.P. rule 41, *supra*, and 18 U.S.C. § 3103a has "been developed in an extensive body of case law" but that "In the present context, however, what would constitute probable cause is much less clear." [R., Vol. I, pp. 6, 7.] The court then implied agreement with the dissent filed by Judge Gurfein in *United States v. First National City Bank, supra*, that "probable cause" was not shown. Even so, the district court did not delineate that which the court would find sufficient to establish probable cause. In fact, the court observed that even if the matters contained in the Ely affidavit were sufficient to establish probable cause, still the form of the order submitted by IRS "is clearly prohibited by the Fourth Amendment." [R., Vol. I, p. 7.] We know of no rule which prohibits the court from directing a redraft of any order submitted to it in order to conform or company with the mandates of the court. The fact that the IRS order submitted for the court's consideration was not satisfactory in form does not, in our view, establish a sufficient basis to refuse the issuance of an order drawn in compliance with the views of the court.

In the context of the criminal law, probable cause under the Fourth Amendment exists if the facts and circumstances within the affiant's knowledge or of which he has reasonably trustworthy information are sufficient to lead a reasonably prudent man to believe that an offense probably has been or probably is being committed. *Aguilar v. Texas, supra; Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Spinelli v. United States, supra*.

■ A decision of a neutral magistrate with regard to a finding of probable cause must be predicated on the particular facts of the case presented. Thus, unlike the thrust of probable cause required in the context of the criminal law, i. e., the probability that a crime has been or is being committed, requiring a search for specific items at a particular place, the "probable cause required to support a particular inspection [search] in relation to the enforcement of municipal health, housing or fire regulations is reasonable if the public need

for effective enforcement of the particular regulations involved justifies the intrusion, weighed in relation to the reasonable goals of the codes or statutes. *Camara v. Municipal Court, supra; See v. Seattle, supra.* *See*: "Probable cause" basis for issuance of search warrants relating to violations of the liquor laws. 45 Am.Jur.2d, Intoxicating Liquors, § 473.

A current problem area involving the Fourth Amendment relates to inspections under the Occupational Safety and Health Act of 1970. 29 U.S.C.A. § 657(a), relating to inspections, does not impose any particular requirement that the OSHA compliance officers obtain search warrants. The statute authorizes the officers to enter any work place "without delay" and to "inspect and investigate" in order to enforce the Act. The Act does require that inspections be conducted "during regular working hours" or "at other reasonable times" and must be conducted "within reasonable limits and in a reasonable manner." This authorization generated challenges that the Act is violative of Fourth Amendment protections.

In *Frank Irey, Jr., Inc. v. Occupational Safety & Health Review Commission*, 519 F.2d 1200 (3rd Cir. 1975), cert. granted, 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976), the Court held that the Fourth Amendment is not applicable to OSHA inspections, in apparent reliance upon the proposition that the penalty is civil rather than criminal in nature. In *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D.Ga.1974) it was held that the OSHA compliance officer's right to inspect viewed within the framework of the Act [and the regulatory powers of the federal government] did not constitute an unreasonable search under the Fourth Amendment. The court observed that the Act furthers an urgent federal interest and that when measured against the invasion of privacy, the requirement of showing "probable cause" would destroy the objects of the Act. *Contra: Brennan v. Gibson's Products, Inc. of Plano*, 407 F.Supp. 154 (E.D.Tex.1976); *Barlow's, Inc. v. Usery*, 424 F.Supp. 437

(D.C.Idaho 1976), affirmed, *Marshall v. Barlow's, Inc.,* —— U.S. ——, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Dunlop v. Hertzler Enterprises, Inc.,* 418 F.Supp. 627 (D.C.N.M. 1976).

In *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Supreme Court invalidated a warrantless search by a roving patrol of the Immigration and Naturalization Service which was purportedly authorized by certain statutes and regulations, permitting warrantless searches for aliens, without probable cause, within a 100-mile zone along the border of the United States and Mexico. The government relied on cases involving administrative inspections to validate the warrantless searches. The Court held that neither its "automobile search" decisions nor its "administrative inspection" decisions provided any support for the warrantless stops and searches conducted in *Almeida-Sanchez.* The court's discussion of its prior decisions in the area of administrative inspections [searches] casts some light on the "probable cause" problem presented in the case at bar:

> In *Camara v. Municipal Court,* 387 U.S. 523, [87 S.Ct. 1727, 18 L.Ed.2d 930,] the Court held that administrative inspections to enforce community health and welfare regulations could be made on less than probable cause to believe that particular dwellings were the sites of particular violations. *Id.,* at 534–536, 538, [87 S.Ct. 1727 at 1733–1734, 1735]. Yet the Court insisted that the inspector obtain either consent or a warrant supported by particular physical and demographic characteristics of the areas to be searched. *Ibid.* See also *See v. City of Seattle,* 387 U.S. 541, [87 S.Ct. 1737, 18 L.Ed.2d 943]. The search in the present case was conducted in the unfettered discretion of the members of the Border Patrol, who did not have a warrant, probable cause, or consent. The search thus embodied precisely the evil the Court saw in *Camara* when it insisted that the "discretion of the official in the field" be circumscribed by obtaining a warrant prior to the inspection. *Camara, supra,* at 532–533, [87 S.Ct. 1727, at 1733].

Two other administrative inspection cases relied upon by the Government are equally inapposite. *Colonnade Catering Corp. v. United States,* 397 U.S. 72, [90 S.Ct. 774, 25 L.Ed.2d 60] and *United States v. Biswell,* 406 U.S. 311, [92 S.Ct. 1593, 32 L.Ed.2d 87], both approved warrantless inspections of commercial enterprises engaged in businesses closely regulated and licensed by the Government. In *Colonnade,* the Court stressed the long history of federal regulation and taxation of the manufacture and sale of liquor, 397 U.S., at 76–77, [90 S.Ct. 774, at 776–777]. In *Biswell,* the Court noted the pervasive system of regulation and reporting imposed on licensed gun dealers, 406 U.S., at 312 n.1, 315–316, [92 S.Ct. 1593, at 1594, 1596].

A central difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business. The businessman in a regulated industry in effect consents to the restrictions placed upon him. As the Court stated in *Biswell* :

> "It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority . . . . The dealer is not left to wonder about the purposes of the inspector or the limits of his task." *Id.,* at 316, [92 S.Ct. 1593, 1596.]

Moreover, in *Colonnade* and *Biswell,* the searching officers knew with certain-

ty that the premises searched were in fact utilized for the sale of liquor or guns. In the present case, by contrast, there was no such assurance that the individual searched was within the proper scope of official scrutiny—that is, there was no reason whatever to believe that he or his automobile had even crossed the border, much less that he was guilty of the commission of an offense.

413 U.S., at pp. 270–272, 93 S.Ct., at pp. 2538–2539.

The recent Supreme Court decision in *Marshall v. Barlow's, Inc., supra,* involving OSHA inspections casts the most recent light on the civil probable cause standard required to support administrative searches. There the court held that OSHA's authorization of warrantless inspections of business premises ran afoul the Warrant Clause of the Fourth Amendment. Holding that OSHA inspections could not be undertaken following refusal to enter without first seeking an *ex parte* warrant to enter and inspect, the court then addressed itself to the probable cause requirements supporting an OSHA inspection search warrant:

> Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an * * * inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court, supra,* at 538 [87 S.Ct., at 1736]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area,

and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights. We doubt that the consumption of enforcement energies in the obtaining of such warrants will exceed manageable proportions.

—— U.S., at ——, 98 S.Ct., at 1824.

In *United States v. Blanchard*, 495 F.2d 1329 (1st Cir. 1974) the Court discussed a challenge to a search warrant obtained by agents of the Federal Bureau of Alcohol, Tobacco and Firearms to inspect a tavern owned by Blanchard to determine the presence of any liquor bottled for sale which contained distilled spirits other than those contained in the bottles at the time of stamping. Appellants contended that the search warrant had been issued without sufficient facts to establish probable cause. The court disposed of this contention, as follows:

> However, in pressing this contention, defendants misconceive the true nature of the warrant at issue. In seeking to inspect defendants' premises, the agents were not attempting to make what might be called a "traditional" fourth amendment search. *See, e. g., Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Rather, pursuant to existing statutory authority, *see* 26 U.S.C. §§ 5146(b), 7606(a) (1970), and related administrative regulations, the agents were simply seeking a warrant to enable them to complete a valid and permissible regulatory inspection. *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). While the fourth amendment's requirement of reasonableness clearly extends to the application for such inspection warrants, *Camara v. Municipal Court, supra,* 387 U.S. at 528–534, [87 S.Ct. 1727,] it is settled law that such warrants may issue despite the absence of probable cause to believe that a specific violation has occurred. *Id.* at 534, [87

S.Ct. 1727]. Rather, where "reasonable legislative or administrative standards" have been satisfied, the limitations upon inspection searches imposed by the fourth amendment will be deemed to have been complied with. *Id.* at 538, [87 S.Ct. 1727.] In the instant case, the application for the warrant indicated that, upon personal examination of the agent, it appeared that the defendant tavern was serving liquor despite the absence of the required Retail Liquor Dealer's Special Tax Stamp. *See* 26 U.S.C. § 6806 (1970). Moreover, the application additionally asserted that no inspection of the defendants' premises had previously been made within the past twelve months. We think that in an industry so heavily and historically regulated as the liquor trade, *see Colonnade Catering Corp. v. United States, supra,* 397 U.S. at 75, 77, [90 S.Ct. 774], a· warrant issuing upon either of these two operative facts would easily comport with existing administrative and legislative inspection criteria, and would thus be reasonable under the fourth amendment.

495 F.2d, at 1331.

Thus, while the contours are yet somewhat loosely defined, the "probable cause" requirements of the Fourth Amendment in relation to issuance of search warrants in conjunction with administrative proceedings cannot be equated with the "probable cause" requirement of the "traditional" Fourth Amendment search in the criminal law setting. *Marshall v. Barlow's, Inc., supra* ; *United States v. Blanchard, supra.*

▉ The Ely affidavit submitted in support of the IRS application in the instant case thus must be judged in the context of the applicable provisions of the Code. The record evidences that Carlson received the specific notice and demand for payment pursuant to 26 U.S.C.A. § 6331 and that he failed and refused to pay the taxes assessed. All administrative processes were pursued prior to the IRS application for court sanctioned authority to enter the Carlson business premises (consent thereto having been denied) in order to seek out

and seize property of Carlson subject to levy. We believe that it is well to emphasize that *G. M. Leasing, supra,* held that the purpose of the "search warrant" for tax levies is designed to protect against *unjustified* "intrusions into privacy" or "warrantless invasions of privacy." The Supreme Court insisted that such determination must be made by a neutral, disinterested judicial officer.

After the instant case was decided in the district court, this court, upon remand, held in *G. M. Leasing Corp. v. United States,* 560 F.2d 1011 (10th Cir. 1977) that the IRS agents who had conducted the illegal search of assets were not liable in damages for the illegal seizure thereof. The Supreme Court had remanded to this court for further proceedings determinative of this issue. This court thereafter held that the IRS agents had acted pursuant to advice of IRS regional counsel and that this established that the agents had acted on a reasonable, good-faith belief that their conduct was lawful, thus precluding the agents from personal liability in damages for violation of Fourth Amendment rights. Certiorari was denied by the Supreme Court in 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516, dated March 20, ·1978. We are cognizant that denial of a writ of certiorari imports no expression of opinion by the United States Supreme Court on the merits. *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), rehearing denied, 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368 (1947). Even so, the opinion of this court reported in 560 F.2d 1011, *supra,* becomes the law of this circuit. The significance, in our view, is that IRS agents and other revenue officials are likely not to pursue administrative entry of private premises henceforth absent the protective order of a court of competent jurisdiction. Lacking such authority, one may safely conclude that no such entries, seizures and levies are likely to be undertaken. And, if such enforcement measures are unavailable, the end result would probably lead to effective frustration of the mandates of the code relating to tax payments.

We reverse the district court finding/conclusion that it does not have jurisdiction to entertain the summary, *ex parte*, IRS application for administrative search warrants. We remand for further proceedings consistent with this opinion relative to the sufficiency of the affidavit to establish that degree of "probable cause" deemed necessary to satisfy the commands of the Fourth Amendment in the context of the administrative enforcement of the federal tax laws.