UNITED STATES of America,
Petitioner-Appellee,

v.

FIRST NATIONAL CITY BANK,
Respondent-Appellant,

and

Milton F. Meissner, Proposed
Intervenor-Appellant.

Nos. 114, 115, Dockets 75–6007, 75–6008.

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 1975.

Decided Feb. 4, 1977.

Henry D. Harfield, New York City (Matthew C. Gruskin, and Shearman & Sterling, New York City, on the brief), for respondent-appellant First National City Bank.

R. Kenly Webster, Washington, D.C. (Neal J. Hurwitz, New York City, and Kennedy & Webster, Washington, D.C., on the brief), for proposed intervenor-appellant Milton F. Meissner.

William R. Bronner, Asst. U.S. Atty., New York City (Paul J. Curran, U.S. Atty., and Steven J. Glassman, Asst. U.S. Atty., New York City, on the brief), for petitioner-appellee United States of America.

Before HAYS, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal presents questions important to the administration of the internal revenue laws. They arise from the use of summary judicial proceedings to enforce IRS levies upon the contents of a taxpayer's safe deposit box following a determination by the IRS that the collection of back taxes from the taxpayer is in jeopardy. The central issue is whether the taxpayer's constitutional rights require that as a *pre*-seizure remedy he be granted leave to intervene in the summary enforcement proceedings or whether the taxpayer's *post*-seizure remedies are adequate to protect his rights. We

affirm the district court's denial of the taxpayer's motion for leave to intervene and its direction that the bank allow the IRS to enter the box and obtain possession of the contents.

## I. PRIOR PROCEEDINGS

Milton F. Meissner and First National City Bank (Citibank) appeal from orders entered in the Southern District of New York, Lloyd F. MacMahon, *District Judge*, 388 F.Supp. 1044, (1) denying Meissner's motion for leave to intervene in pre-seizure summary proceedings to enforce levies on the contents of his safe deposit box; and (2) directing (a) that Citibank allow the IRS to enter the box for the purpose of obtaining possession of the non-exempt contents, and (b) that Citibank retain possession of the contents not removed by the IRS, subject to further order of the court.[1]

On April 9, 1974, the IRS made a jeopardy assessment against Meissner pursuant to § 6851(a).[2] It did so because it believed Meissner[3] owed substantial back taxes for the years 1970 and 1971, the collection of which was in jeopardy.[4] The IRS immediately served upon Meissner a notice of assessment and a demand for payment pursuant to § 6861(a). It also served a notice of deficiency pursuant to § 6861(b); this enti-

---

1. The original order denying Meissner's original motion for leave to intervene is dated December 31, 1974; and a further order upon Meissner's motion for reargument, adhering to the original order, is dated May 20, 1975. The order directing Citibank to allow the IRS to enter the box is dated January 27, 1975. All orders implemented the court's opinion dated December 31, 1974.

2. Unless otherwise stated, all citations to statutory provisions in this opinion are to sections of Title 26 of the United States Code, 1970 codification; here, for example, to 26 U.S.C. § 6851(a) (1970).

3. Meissner is no stranger to this Court or to the District Court for the Southern District of New York. See *I.I.T. v. Vesco*, Dkt. Nos. 74–1969, 2366, 2341 (2 Cir. April 28, 1975); *S.E.C. v. Stewart*, 476 F.2d 755 (2 Cir. 1973). He has been a close associate of Robert L. Vesco in the affairs of Investors Overseas, Ltd. (I.O.S.), of which he eventually became president. At the

time of the instant proceedings in the district court and up to the present time, Meissner was and has been a fugitive, living in the Bahamas or in Costa Rica. On April 1, 1974—eight days before the jeopardy assessment against Meissner here involved—a warrant for his arrest was issued by Judge Tenney of the Southern District of New York because of Meissner's failure to comply with a grand jury subpoena which had been served on him and his failure to comply with Judge Pollack's order of March 5, 1974 specifically ordering him to appear before the grand jury.

4. For the distinction between the collection methods available to the IRS, including jeopardy assessments, and the usual procedures where there has been no jeopardy determination, see *Laing v. United States*, 423 U.S. 161, 169–71 (1976), and *Commissioner v. Shapiro*, 424 U.S. 614, 616–17 (1976).

tled Meissner to litigate his liability before the Tax Court, which he has done.

On April 10, the IRS issued jeopardy levies pursuant to § 6331(a) upon the contents of two safe deposit boxes leased by Meissner, one from Citibank and the other from Chemical Bank New York Trust Co. (Chemical).[5] The two banks refused the IRS access to the boxes. On October 4, the United States Attorney commenced the instant proceedings against the banks for summary enforcement of the IRS levies pursuant to § 7402(a). On October 15, Meissner, who was not a party to the summary enforcement proceedings, moved for leave to intervene in those proceedings.

The district court denied Meissner's motion for leave to intervene and directed the banks to allow the IRS access to Meissner's safe deposit boxes. See note 1, *supra*. The court also granted the motions of Meissner and Citibank for stays pending appeal conditioned on Meissner's posting a $260,000 bond, the approximate amount of his back taxes.

Instead of posting the bond ordered by the district court, Meissner moved in our Court for a stay pending appeal without bond. Citibank also moved in our Court for a stay pending appeal. We denied both motions on April 15, 1975. On April 17, Mr. Justice Marshall likewise denied appellants' applications for stays.

Chemical thereafter turned over to the IRS the contents of its safe deposit box which Meissner leased; and the government filed with the court an inventory, dated April 22, of the contents of the Chemical box. Citibank, on the other hand, while allowing the IRS access to the contents of its safe deposit box leased by Meissner,

refused to permit the IRS to remove the contents. On April 22, after a hearing, the district court ordered that the Citibank box be placed under the joint control of the government and the bank. The court also ruled that the government, in order to remove the contents of the box, would be required to serve a formal subpoena. The government did serve upon Citibank an administrative subpoena demanding that the bank turn over to the IRS the contents of the box. No further action has been taken to enforce that subpoena pending the outcome of the instant proceedings.

The present appeals are from the district court's orders denying Meissner's motion for leave to intervene and directing Citibank to turn over to the IRS the contents of its safe deposit box leased by Meissner.

The essential questions presented are (1) whether summary proceedings to enforce IRS levies are authorized by § 7402(a); (2) whether Meissner is barred by § 7421(a) (the Anti-Injunction Act) from raising his claims in the pre-seizure summary proceedings; and (3) whether Meissner is entitled to intervene in the pre-seizure summary proceedings to protect his constitutional rights.

## II. SUMMARY ENFORCEMENT PROCEEDINGS PURSUANT TO SECTION 7402(a)

Appellants claim that the district court lacked jurisdiction to enforce the IRS levies by summary proceedings. They argue that § 7402(a),[6] relied on by the district court, authorizes only "writs and orders" ancillary to plenary civil actions. We disagree.

The language of this statute is broad and clear. In addition to authorizing writs and

---

**5.** Chemical, having complied with the order of the district court by turning over to the IRS the contents of its safe deposit box leased by Meissner, is not a party to the instant appeal.

**6.** 26 U.S.C. § 7402(a) provides:
 "§ 7402. Jurisdiction of district courts.
 (a) To issue orders, processes, and judgments.
 The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil

actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."

orders ancillary to civil actions, it gives the district courts jurisdiction to issue "such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." We decline to construe such a broad statutory mandate so restrictively as to add nothing to the power conferred by the All Writs Act, 28 U.S.C. § 1651 (1970).[7] We hold, as the Third Circuit did in *United States v. Mellon Bank, N.A.*, 521 F.2d 708, 710–11 (3 Cir. 1975) (related case),[8] that § 7402(a) authorized the summary enforcement proceedings in the district court.

### III. ANTI–INJUNCTION ACT— SECTION 7421(a)

Before turning to Meissner's constitutional claims, we must determine whether he is barred by the Anti-Injunction Act[9] from raising those claims in the instant proceedings. We hold that he is not.

7. In *New Hampshire Fire Insurance Co. v. Scanlon*, 362 U.S. 404 (1960), the Supreme Court, in holding that summary proceedings instituted by a private party to quash an IRS levy on property held by a stakeholder are not authorized by 28 U.S.C. § 2463, carefully qualified its holding as follows:

"*In the absence of express statutory authorization*, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law." 362 U.S. at 407 (footnotes omitted) (emphasis added).

We hold that § 7402(a) provides precisely that "express statutory authorization" here.

8. In *Mellon* the district court allowed Meissner to intervene in the pre-seizure summary proceedings against another bank, but then granted the government's petition for enforcement. The district court held that Meissner was precluded from litigating his counterclaims by the Anti-Injunction Act, 26 U.S.C. § 7421(a) (1970).

The Third Circuit reversed the district court's holding with respect to the Anti-Injunction Act. While holding that the Act did not preclude litigation of Meissner's counterclaims in the pre-seizure proceedings, see our holding under Section III of this opinion, *infra*, the court did not reach the merits of Meissner's claims. 521 F.2d at 711 n. 12. The court noted that there were "considerable problems with all of the claims Meissner proposed to raise on intervention . . . ." *Id.* at 711 n. 11. The court held that Meissner was not an indispensable

Section 7421(a) has no application to counterclaims or defenses interposed by a taxpayer in an action brought *by the government.* By its terms, this statute applies only to a "suit for the purpose of restraining the assessment or collection of any tax," meaning of course a suit *by a taxpayer.* It would seem fundamental that when Congress confers jurisdiction upon the district courts to entertain a government action to collect taxes, it may not bar a taxpayer from asserting in such action counterclaims or defenses which affect his rights with respect to the taxes sought to be collected.

In *Commissioner v. Shapiro*, 424 U.S. 614 (1976), which was a *post*-seizure injunction action by the taxpayer, the Court held that the Anti-Injunction Act did not bar such an action and that the taxpayer would be entitled to injunctive relief if (1) he could show a likelihood of irreparable injury, and (2) the government could not establish a factual basis for its assessment.[10] 424 U.S. at

party entitled to intervention *as of right* under Fed.R.Civ.P. 24(a), but that the district court had not abused its discretion under Rule 24(b) in *permitting* him to intervene. *Id.* at 711 n. 11.

9. The Anti-Injunction Act, 26 U.S.C. § 7421(a), provides:

"§ 7421. Prohibition of suits to restrain assessment or collection.

(a) Tax.

Except as provided in sections 6212(a) and (c), 6213(a) and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

10. The Supreme Court in *Shapiro* reaffirmed its earlier interpretation of § 7421(a) in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962), where it held:

"The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the government ultimately prevail, the central purpose of the Act is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists."

627–32. While the Court's holding was based on its interpretation of the statute, it strongly suggested that a narrower construction of the jurisdiction of the courts under the statute would involve "serious constitutional problems." *Id.* at 629.

In view of our holding below, under Section IV of this opinion, that Meissner is not entitled to a *pre*-seizure hearing, it is not necessary for us to decide what effect *Shapiro* (which was a *post*-seizure action) would have on the instant proceedings.

It is sufficient in the instant case to hold, as the Third Circuit did in *United States v. Mellon Bank, N.A., supra,* that the Anti-Injunction Act does not bar Meissner from raising his constitutional claims in the instant proceedings. See note 8, *supra.*

## IV. CONSTITUTIONAL CLAIMS

Turning directly to the constitutional claims which Meissner sought to raise by his motion for leave to intervene in the summary enforcement proceedings, and viewing the record in the light most favorable to Meissner, it appears that the following are the claims he sought to raise: (1) due process claim under the Fifth Amendment; (2) search and seizure claim under the Fourth Amendment; and (3) self-incrimination claim under the Fifth Amendment.[11]

### (1) *Due Process Claim*

■ In order to focus on the precise due process claim raised, it is important to bear

The Court in *Shapiro* reaffirmed its holding in *Enochs* that the *government* is required to come forward with facts to establish that its assessment has a basis in fact. 424 U.S. at 627–32.

11. The record before us is less than clear as to precisely what constitutional claims Meissner sought to raise. In a brief in support of his original motion for leave to intervene, his counsel asserted that enforcement of the government levy would violate Meissner's constitutional privileges under the Fourth and Fifth Amendments; that the IRS assessment was inaccurate and that the levy had not been carried out according to § 6331(a); that the government's rights were fully protected without opening the safe deposit box; and that the taxpayer required discovery to determine whether the government had complied with all statutory and regulatory requirements in making the jeopardy assessment. Some seven

in mind what is *not* involved. The issue here is not whether the taxpayer has a right to a hearing *after* his property has been seized. Rather, the issue is whether he is entitled to litigate his claims *before* the government has obtained possession of the contents of his safe deposit box. Meissner has not commenced an action of his own. Instead, he has sought by intervening to oppose every step of the government's pre-seizure enforcement proceedings.

In *Commissioner v. Shapiro*—a post-seizure injunction action—the Court stated that due process required "some kind of predeprivation *or prompt post-deprivation* hearing." 424 U.S. at 629 (emphasis added). The Court again noted:

"We have often noted that, in resolving a claimed violation of procedural due process, a careful weighing of the respective interests is required, *Goss v. Lopez,* 419 U.S. 565, 579 (1975); and we have noted that the Government's interest in collecting the revenues is an important one, *Fuentes v. Shevin,* 407 U.S. 67, 92 (1972). *This interest is clearly sufficient to justify seizure of a taxpayer's assets without a pre-seizure hearing, Fuentes v. Shevin, supra,* and to remove any need to subject the Commissioner to the burden of an inquiry into the basis for his assessment absent factual allegations of irreparable injury by the taxpayer. *Phillips v.*

months later, in a letter dated May 13, 1975 which Judge MacMahon treated as a motion for reargument, note 1, *supra,* Meissner's counsel interposed an even broader claim that Meissner was entitled to intervene "in order to resolve serious questions involving constitutional and property rights. . . ." Meissner's brief on appeal again asserts vaguely defined claims involving his property interests and the propriety under the Constitution and provisions of the Internal Revenue Code of the summary judicial proceedings to enforce the IRS levies.

Citibank's position is that it holds no property or rights to property of Meissner; that Meissner as the lessee of the safe deposit box is an indispensable party to the summary proceedings; and that summary proceedings, absent a plenary action, are not authorized.

Commissioner, 283 U.S. 589, 595, 596–97 (1931) . . . ." *Id.* at n. 12 (emphasis added).

Under *Shapiro* the taxpayer is entitled to an initial hearing on his claims before a subsequent determination in the Tax Court or in a suit for a refund, "at least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties. . . ." 424 U.S. at 629 & n. 12.[12] Meissner's remedy for alleged deprivation of his property rights is in a post-seizure hearing of the sort described in *Shapiro.*

We hold that the due process clause does not entitle Meissner under the circumstances of this case to intervene in the pre-seizure enforcement proceedings and thus to impede the government's efforts to obtain possession of the contents of the safe deposit box pursuant to its jeopardy assessment.

**(2)** *Search and Seizure Claim*

■ Meissner's principal claim appears to have been that the search of his safe deposit box violated his Fourth Amendment rights. Granted that the search did come within the scope of the Fourth Amendment, we do not believe that Meissner's intervention in the summary proceedings was required to protect his Fourth Amendment rights. We hold that there was sufficient probable cause for the district court to order that the bank allow the government to search the safe deposit box.[13]

No one would contend that a suspect has a right to intervene in opposition to an application by a police officer for a search warrant. The policies favoring expeditious

tax enforcement procedures are as compelling as the need to effect a speedy search of a suspect's premises. To allow a taxpayer to tie up the initial enforcement proceedings after he has been given notice of the jeopardy assessment most assuredly would subvert the statutory purpose of the jeopardy assessment provisions. By delaying enforcement a taxpayer could secrete or dissipate what assets he had left. The government's interests moreover cannot be protected adequately merely by sealing the safe deposit box. The government must be able to search the contents of the box to determine the value of what is there *and* to learn what other assets the taxpayer may have elsewhere. We refuse to sanction the impeding of these investigatory functions and the concomitant frustration of the jeopardy assessment procedure which would result from intervention by the taxpayer in the pre-seizure enforcement proceedings.

The "warrant preference rule" requires no more than that a detached magistrate determine whether there is sufficient probable cause for the search. *Mancusi v. De-Forte,* 392 U.S. 364, 370–72 (1968); *Camara v. Municipal Court,* 387 U.S. 523 (1967); *Johnson v. United States,* 333 U.S. 10 (1948). That is precisely what was done here. The government's representations in support of its petition for enforcement, coupled with Meissner's own admissions in his motion papers, provided sufficient probable cause for the court to authorize the search of Meissner's safe deposit box. Although Meissner challenged the amount of the deficiencies assessed, he admitted that he had not properly computed his taxes. He did

---

12. In *Laing v. United States,* 423 U.S. 161, 183 & n. 26 (1976), the Court noted that it did not have before it the question whether due process requires a post-seizure determination *prior* to a hearing in the Tax Court. The majority expressed no doubt about the propriety of denying the taxpayer a pre-seizure hearing. Justice Brennan, in his concurring opinion, expressed concern about the possibility of erroneous determinations by the Commissioner and emphasized the need for prompt review; but he acknowledged that "[n]o hearing is required, judicial or administrative, prior to the seizure." 423 U.S. at 186.

13. We do not find dispositive those cases cited by the government for the proposition that a taxpayer has no Fourth Amendment right to prevent the government from obtaining records kept by a bank or by an accountant. Unlike the situation here, in each of the cited cases the customer had little if any interest in, or expectation of privacy with respect to, the records kept by a bank or turned over to an accountant. *California Bankers Association v. Shultz,* 416 U.S. 21, 52–53 (1974); *Couch v. United States,* 409 U.S. 322, 335–36 (1973); *Donaldson v. United States,* 400 U.S. 517, 530–31 (1971); *id.* at 537 (Douglas, *J.,* concurring).

not deny that he owed substantial back taxes. Moreover his refusal to obey a grand jury subpoena, his absence from the United States in view of pending criminal and civil investigations involving him, and the IRS' inability to discover other assets owned by Meissner in the United States provided sufficient reason to believe that the collection of deficiencies against Meissner might be in jeopardy.

Beyond the protection afforded Meissner by the presentation of the government's petition to the district court in the summary enforcement proceedings, he is not foreclosed from objecting in subsequent civil or criminal proceedings to the use of evidence improperly obtained. This protection is no less than that required in the context of searches for other purposes.

Finally, Meissner relies on *Reisman v. Caplin*, 375 U.S. 440 (1964), in support of his contention that he was entitled to intervene in the summary enforcement proceedings to assert his Fourth Amendment claim. In *Donaldson v. United States*, 400 U.S. 517, 529 (1971), the Court pointed out that the language in *Reisman* with respect to a taxpayer's intervention "is permissive only and is not mandatory." The Court in *Donaldson* also indicated that intervention would be appropriate only in very limited circumstances, such as where a party's rights are inadequately protected otherwise and where they outweigh the government's interests in an expedited determination. *Id.* at 529–30 & n. 12. That is not the situation here.

(3) *Self-Incrimination Claim*

██ Meissner also suggests that his Fifth Amendment privilege against self-incrimination somehow was violated by the government's search of his safe deposit box.

We reject this claim as wholly without merit. It is well settled that "[c]ompulsion upon the person asserting it is an important element of the privilege [against self-incrimination] . . . ." *Couch v. United States*, 409 U.S. 322, 328 (1973). Here there was no such compulsion on Meissner who did not have possession of the contents of the safe deposit box.

We affirm the district court's denial of Meissner's motion for leave to intervene and its direction that Citibank allow the IRS to enter the box for the purpose of obtaining possession of the contents.[14]

Affirmed.

GURFEIN, Circuit Judge, concurring and dissenting:

I would go further than my brother Timbers in favor of the Government in one respect. Instead of rejecting the Government's contention that if Meissner is a fugitive he should not be permitted to press his appeal, see majority opinion at note 14, I would accept it and dispose of the case on that basis. If Meissner is a fugitive now, a matter which was in some dispute when the appeal was argued, he should not have a right to appeal, and his appeal, and concomitantly the appeal of the bank, should be dismissed. *See Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). A remand should be ordered, therefore, to determine whether Meissner is a fugitive.

If, on remand, he is found not to be a fugitive, then I think it would be an abuse of discretion to deny him permissive intervention under F.R.Civ.P. 24(b). *See United States v. Mellon Bank, N.A.*, 521 F.2d 708, 711 n. 11 (3d Cir. 1975), a related case where permission to intervene was sustained on

14. In view of our rulings above on what we consider to be the essential questions presented, we find it unnecessary to discuss other claims asserted by the government, e. g., that the orders from which the instant appeals have been taken are not final; that the appeals are moot; and that Meissner as a fugitive should not be permitted to press his appeal. Suffice it to state that we summarily reject these claims.

In short, we have carefully considered all claims raised by all parties to the instant appeals. With the exception of those specifically discussed and ruled upon in the body of this opinion, we find all other claims to be without sufficient merit to warrant discussion.

appeal.[1] *Cf. Donaldson v. United States,* 400 U.S. 517, 528–30, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). *Donaldson* involved a summons for records of employment and the like and did not in any way involve *private papers* of the taxpayer.[2] The Supreme Court, so far as appears, has not had occasion to consider in a civil action a taxpayer's Fourth Amendment claim relating to private papers in a safe-deposit box.

The majority opinion discussed Fourth and Fifth Amendment claims by the taxpayer. So far as stock certificates and other paraphernalia of ownership are concerned, I see no constitutional problem. So far as private papers, unrelated to the tax assessment are concerned, I think the scope of the order below was too broad in allowing the internal revenue agents to rummage through everything in the safe-deposit box without judicial supervision. In any event, the Government has actually been permitted to inspect whatever private papers may have been in the box, and, in that aspect, the case has become moot. I mention this to emphasize that my brother Timbers' views on the Fourth and Fifth Amendments are his own views expressed *obiter.* Lest I be thought to agree, I must indulge in some *dicta* of my own.

What the majority elides in its discussion of the Fourth Amendment (Part 2) and which concerns me, is the constitutional claim that arises under the Fourth Amendment with respect to private papers, *other* than the tangible assets involved in the tax matter, which may be situated in the safe-deposit box.

My brother Timbers concedes that "the search did come within the scope of the Fourth Amendment." He also concedes that cases where the Government seeks to obtain "records kept by a bank or an accountant" are not dispositive, because of a lack of "expectation of privacy." Note 13. But the majority sustains the broad order below on the curious ground that "probable cause" was shown. But they do not tell us "probable cause" to believe what. The analogy to warrants issued on probable cause in criminal cases, with due respect, has nothing whatever to do with a search of private papers in a civil tax proceeding which are not "particularly describe[d]," and which are presumptively neither contraband nor evidence.

The order below, perhaps because taxpayer's counsel was not permitted to join in its drafting, is simply too broad. It allows the IRS to have access to whatever private papers might be contained in the vault. In that sense the order is no less than a general writ proscribed by the Fourth Amendment which I believe Judge MacMahon did not intend. In modern times the strong box formerly kept at home is now the safe-deposit box kept in the vault of a bank. Out of fear of fire and burglary, private papers are kept safe away from home. The place of deposit makes them no less "private papers," and there is every expectation of privacy, *see Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in a bank vault. By way of example, there is no reason for the internal revenue agents to read a man's letters to his wife when he was courting her in order to perfect a lien on his assets. The Fourth Amendment speaks of "the right of the people to be secure in their . . . papers . . .

1. It is doubtful whether the bank itself can claim the constitutional rights of the third party—*jus tertii*—in the absence of statutory authority. *See, e. g., Sierra Club v. Morton,* 405 U.S. 727, 732 & n. 3, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Linda S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). *See* Note, *Standing to Assert Constitutional Jus Tertii,* 88 Harv.L.Rev. 423 (1974). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22

L.Ed.2d 176 (1969); *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *see Singleton v. Wulff,* 428 U.S. 106, 118, 96 S.Ct. 2868, 2876, n. 7, 49 L.Ed.2d 826 (1976).

2. The Fourth Amendment claim was withdrawn. *See* 400 U.S. at 521, 91 S.Ct. 534. In any event, the *obiter* statement of Mr. Justice Blackmun concerning the Fourth Amendment on page 522, 91 S.Ct. 534, related only to records of accounts in banks, not safe-deposit boxes.

against unreasonable searches and seizures." And when warrants issue upon probable cause supported by oath or affirmation, they must particularly describe the ". . . things to be seized."

I respectfully suggest that my brothers do not face this problem of private papers—unrelated to tangible assets of the taxpayer or the discovery of such—which the order below permitted the Government to take and examine. It is commonplace that the Constitution must be read with the times. This kind of general incursion represents precisely what I think the Founding Fathers would have sought to prevent.

The Republic has survived with the search warrant requirement, codified to eliminate overburdening the Government and with due limitations for the protection of the citizen. We deal here, not with an exclusionary rule that protects the guilty whose guilt is made manifest by the very contraband seized. We deal rather with judicial intervention to serve a limited purpose, to insure that a valid lien of the Internal Revenue Service in a civil tax matter is enforced where the administrative summons encounters a resistance that will bend only to judicial authority.

I agree with the majority that the taxpayer has no Fifth Amendment privilege because he himself is not compelled to produce the papers. See Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Couch was decided principally on Fifth Amendment grounds; the Fourth Amendment was held not to be applicable because there "exists no legitimate expectation of privacy." 409 U.S. at 336, 93 S.Ct. at 619. Mr. Justice Brennan, concurring, did not discuss the Fourth Amendment but would have made the Fifth Amendment

privilege available "to one who places records in a safety deposit box." 409 U.S. 322 at 337, 93 S.Ct. 611, at 620, 34 L.Ed.2d 548. And as the majority opinion notes, the Government itself tried to distinguish United States v. Guterma, 272 F.2d 344 (2d Cir. 1959), albeit again on Fifth Amendment grounds, as involving "mere custodial safekeeping of records," 409 U.S. at 334, n. 16, 93 S.Ct. at 618, the very situation here.

In my view, the analogy to search warrants in criminal cases suggested by the majority is simply inapposite. In the case of a safe-deposit box in a bank, sealing the box is, generally, adequate protection against destruction or diversion of assets there situated. If the Government requires an inventory of assets, an equitable procedure should be evolved to accommodate both interests. I would hold that if Meissner is found by the District Court not to be a fugitive, the order of the District Court denying intervention should be reversed. While it is too late in this case, the Court should be directed in future cases to order that the safe-deposit box be brought to the Courthouse, where under the supervision of the Court, the box would be opened and those private papers, if any, which are unrelated to the taxpayer's assets be given to the taxpayer or his representative without scrutiny by the executive branch. I think this is a sensible procedure which would enable the Government to exercise its right to the taxpayer's assets, as if they were chattels upon which a lien has attached, while preserving the taxpayer's expectation of privacy in his own private papers, see Katz v. United States, supra, which have nothing to do with his tax liability.[3]

I would remand for a determination of whether Meissner is a fugitive and of whether the case is now moot, so far as his private papers are concerned. In other respects, I concur in the majority opinion.

---

3. The American Law Institute in its proposed official draft of A Model Code of Pre-Arraignment Procedure has suggested that where documents other than the subject of a search warrant are found, the executing officer may not examine "intermingled documents," but must present the documents for a judicial hearing at which any person asserting any right or interest in the documents may appear and move for limitations on the further search as may be appropriate to prevent unnecessary or unreasonable invasion of privacy. Section SS 220.5, pp. 134–137 (April 15, 1975). If the ALI is right, a similar procedure would seem to be required a fortiori in a civil tax proceeding.