STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss.                                  CIVIL ACTION
                                                 DOCKET NO: AP-11-011
                                                 *JAW - CUM - 3/20/2012*

~~Mc✓~~

MAREK A. KWASNIK,

                    Petitioner,

          v.

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES and
BANK OF AMERICA

                    Respondents

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 2 0 2012

RECEIVED

## RULE 80C DECISION AND ORDER

Before the court is a Rule 80C petition filed by Marek A. Kwasnik seeking review of the

Maine Department of Health and Human Services enforcement of a New Jersey child support

order by and through an Order to Withhold and Deliver, issued to Bank of America. Also before

the court are the Maine Department of Health and Human Services motions to drop or dismiss

claims against Bank of America as a party and to exclude the additional evidence submitted by

the petitioner.

### Background

Marek A. Kwasnik (the "Petitioner") is subject to a child support order, issued by the

Superior Court of New Jersey on April 10, 2002, requiring him to pay $228.00 per week to Ewa

Hagar (formerly Ewa Skwarczynska) to support their child Robert Kwas. (R. D-2.) The

Supreme Judicial Court of Maine has held that this order is entitled to full faith and credit and is

enforceable by the Maine Department of Health and Human Services ("DHHS"). *Kwasnik v.*

*DHHS*, 2006 ME 27, ¶ 1, 893 A.2d 610 (per curiam), *cert. denied*, 549 U.S. 955 (2006).

1

DHHS had previously issued a "notice of debt," on June 16, 2001, stating that unpaid child support had accrued in the amount of $2,978.00 and was increasing weekly. (R. D-3.) As of January 18, 2011, the Petitioner owed $93,405.01. (R. D-4.) On December 3, 2010, DHHS issued an Order to Withhold and Deliver to Bank of America, pursuant to 19-A M.R.S. § 2358. (R. D-1.) That order directed Bank of America to immediately withhold all property up to the amount of the total debt, other than earnings, and send that property to DHHS within 30 days. (R. D-1, 3-4.) Bank of America complied with the order by withholding the contents of the petitioner's bank account and the contents of his safe deposit box, including a CD, a third-person's will, and an antique silver coin. (R. C-2, C-3; Transcript at 5, 11; Resp. Br. 3 n.3.) Bank of America then notified the Petitioner of the seizure on December 13, 2010. (R. C-3.)

The Petitioner requested an administrative hearing on the Order to Withhold and Deliver, stating that his reasons for appeal were that the seizure of his safe-deposit box and bank account violated the Fourth Amendment. (R. HO-2.) A hearing was held in Portland, Maine on January 19, 2011[1] in front of Hearing Officer Miranda Benedict. (R. B at 1). The Petitioner appeared on his own behalf and Support Enforcement Agency Tracy Vierra appeared on behalf of DHHS. (R. B at 1). Ewa Hagar also appeared on her own behalf via telephone. (R. B at 1-2.) Hearing Officer Benedict issued a Decision After Hearing on February 17, 2011, stating that her review is limited to the issues listed in chapter 12, section 7(H) of the Maine Child Support Enforcement Manual and that, because DHHS followed the procedure for executing an order to withhold and deliver, its actions were lawful. (R. A at 3.) The decision specifically noted that it made no judgment as to the validity of 19-A M.R.S. § 2358.

---

[1] DHHS sent a "Notice of Hearing," dated December 28, 2010, to the Petitioner stating that the hearing is to decide "[if] the amount of your child support order should be changed." (R. HO-1.) However, the parties appear to all have treated this hearing as an appeal of the Order to Withhold and Deliver.

The contents of the safe-deposit box were not delivered or disclosed to DHHS until after the January 19, 2011 administrative hearing. (Pet. Br. 3-4, 37; Resp. Br. 3, n.3; R. B 5.) DHHS then returned to the Petitioner the CD and the will but retained possession of the antique coin. (Resp. Br. 3, n.3.)

The Petitioner filed this petition for review ("Petition") on March 18, 2011. On the bases of the Fourth Amendment and Due Process Clause to the United States Constitution and Article I, sections 5 and 6-A of the Maine Constitution, he seeks review of DHHS's denial of (1) his request that DHHS "abandon its policy(ies) – in child support enforcement actions" by returning the antique coin seized[2] and (2) his request that DHHS abandon its policy of issuing liens against safe-deposit boxes of persons owing child support without probable cause. (Pet. ¶¶ 4-6.) Petitioner also seeks review of the constitutionality of "pertaining statutory scheme as currently expressed in Title 19-A M.R.S. §§ 2203, 2357, etc.," an injunction "against the department [sic] unconstitutional policies of overextended unconstitutional control," and an order directing DHHS to return the antique coin. (Pet. ¶ 7.)

On June 13, 2011, DHHS filed a brief in response to the Petition and motions to drop Bank of America as a party and to exclude additional evidence submitted by the Petitioner with his brief. The Petitioner filed his reply and opposition to the motions on July 5, 2011. Oral argument was held on the appeal and pending motions on November 30, 2011.

---

[2] The court reads this request to be referring to the Petitioner's argument that the April 2002 New Jersey child support order is unconstitutional and unenforceable. As noted above, the Petitioner has previously raised this issue before the Maine courts and has received a ruling from the Law Court finding that the New Jersey order is entitled to the full faith and credit of Maine law and may be enforced by DHHS. 2006 ME 27, ¶ 1, 893 A.2d 610. Because the validity of the New Jersey order is not properly before this court, this order will not consider arguments arising from the validity of that order.

3

## Discussion

### I.     Motion to Drop Bank of America as a Party

DHHS has moved to drop Bank of America from this action pursuant to M.R. Civ. P. 21 or, alternatively, to dismiss any pending claim against Bank of America pursuant to M.R. Civ. P. 12(b)(6). It argues that there is no cause of action asserted against Bank of America and because this action was brought pursuant to M.R. Civ. P. 80C, there is no relief available against Bank of America. The Petitioner argues that Bank of America is a necessary party because final relief cannot be granted without joinder of both parties and that for collateral estoppel and judicial economy purposes both parties should be parties to a single action.

The Petitioner does not state why complete relief cannot be granted without Bank of America as a party and because the Petitioner does not assert any independent claims against Bank of America, the court determines that the parties have been misjoined and dismisses the petition as against Bank of America.

### II.     Additional Evidence

DHHS also moves to exclude the additional evidence submitted by the Petitioner along with his brief in support of the Petition. M.R. Civ. P. 80C requires the agency to file a complete record of the proceedings under review and further permits a petitioner to require the court to take additional evidence, provided that the petitioner file a motion to that effect within ten days of the agency filing the record. M.R. Civ. P. 80C(e)-(f). A failure to make this motion constitutes a waiver of any right to take additional evidence so that the petitioner is bound by the record before the agency, even if the issue on appeal was not within the agency's jurisdiction. *Mathieu v. Comm'r of Human Servs*, 562 A.2d 686, 689 (Me. 1989). The court may order the

4

taking of additional evidence if it finds that additional evidence is needed to review the petition. 5 M.R.S. § 11006(1)(B).

The Petitioner did not present the evidence attached in his Appendix to the agency at the time of the hearing despite being given the opportunity to present additional evidence. (R. B at 9.) The Petitioner has not moved this court to take additional evidence as required by the Maine Rules of Civil Procedure. Furthermore, the court finds that the additional evidence offered by the defendant pertains to the validity of the New Jersey support order and to other arguments that were not raised by the petitioner before the agency. Nothing in the Appendix is related to the constitutional arguments made by the Petitioner.[3] Therefore, this evidence is not necessary for the court to review the Petition and DHHS's motion to exclude the additional evidence is granted.

III.    M.R. Civ. P. 80C:

    a.    *Standard of Review*

The court's power to review a decision of a state agency is confined to an examination of "whether the [agency] correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The court may only reverse or modify an administrative agency's decision if it is

> 1) In violation of constitutional or statutory provisions;
> 2) In excess of the statutory authority of the agency;
> 3) Made upon unlawful procedure;
> 4) Affected by bias or error of law;
> 5) Unsupported by substantial evidence on the whole record; or
> 6) Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. §§ 11007(4)(C) (2010).

---

[3] The Appendix does contain a copy of the Law Court's 2006 decision, cited above. Although the court references this decision in this order, it is not evidence and not required to be in the record.

Additionally, the court cannot substitute its judgment for that of the agency on questions of fact; that is, findings of fact must be affirmed unless clearly erroneous. 5 M.R.S. § 11007(3) (2011); *Green v. Comm'r of the Dep't of Mental Health, Mental Retardation & Substance Abuse Servs.*, 2001 ME 86, ¶ 9, 776 A.2d 612. "[U]nless the record before the [agency] compels a contrary result," the court will uphold the agency decision. *McPherson*, 1998 ME 177, ¶ 6, 714 A.2d 818.

In an appeal from a DHHS order to withhold and deliver, issued pursuant to 19-A M.R.S. § 2358, the hearing officer may only consider four issues: (1) whether the applicable requirements of 19-A M.R.S. § 2358 have been met; (2) whether the debt set forth in the order is correct; (3) whether the parent is receiving public assistance for the benefit of any children; and (4) whether the property is exempt from attachment. 10-144 C.M.R. ch. 351 § 12.7(H) (2008) (DHHS Child Support Enforcement Manual chapter 12, § 7(H)). All objections to the administrative proceeding must be raised before the agency in order to preserve those issues for appeal, even when those issues implicate constitutional questions. *New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me. 1988).

b. *Constitutionality of the Order to Withhold and Deliver*

The court understands the Petition to ask the court to determine the constitutionality of DHHS's actions taken pursuant to 19-A M.R.S. §§ 2357 and 2358,[4] to enjoin DHHS from

---

[4] The Petition actually asks for a review of the constitutionality of the "pertaining statutory scheme as expressed in Title 19-A M.R.S. §§ 2203; 2357, etc." (Pet. ¶ 7(a).) Section 2203 is inapplicable to an order to withhold and deliver; this section authorizes an order to seize and sell to execute a support lien created by § 2357. Section 2357 may be relevant because this section creates a lien in favor of DHHS against all non-exempt property against which DHHS was authorized to issue the order to withhold and deliver. The statutory section giving DHHS authority to issue an order to withhold and deliver is 19-A M.R.S. § 2258. Therefore, the court will consider sections 2357 and 2358 to be the statutory scheme. Also, although the Petition seems to make a facial challenge to the statutory scheme, both parties have addressed their arguments to the constitutionality of the statutes as applied in this case to effect a warrantless search and seizure of the Petitioner's safe-deposit box.

further enforcing the child support obligation against the Petitioner,[5] and, if the statutory scheme is found to be unconstitutional, to order the return of the property held by DHHS. (Pet. ¶ 7.) The Petitioner did properly raise the constitutional question at the administrative hearing, preserving the issue for appeal. (R. B at 8.) The court notes that DHHS was not in a position to make a decision on the constitutionality of these statutes because the authority of the hearing officer is limited to four issues described above. The Petitioner does not argue that DHHS failed to follow the statutory provisions authorizing issuance of the Order to Withhold and Deliver, that the debt set forth in the order is incorrect, that he is on public assistance,[6] or that the property withheld is exempt. Therefore, the court will only address the constitutionality of the search and seizure of a safe-deposit box, pursuant to the statute authorizing DHHS to issue an order to withhold and deliver.

The Petitioner argues that agents of the executive branch of government may only enter private homes for the search of illegal items after a court has issued a warrant, based on probable cause. (Pet. Br. 36.) He further argues that because he had an expectation of privacy in the safe-deposit box, similar to that in his home, (Pet. Br. 36), DHHS's actions violated the Fourth Amendment of the United States Constitution and Article I, section 5 of the Maine Constitution because it acted without probable cause (because there was no information as to the contents of the safe-deposit box) and without a warrant (Pet. Br. 33, 37).

---

[5] The language of the Petition is: "Ordering injunction against the department [sic] unconstitutional policies of overextended unconstitutional control...." The court interprets this language to be seeking an injunction against DHHS's future enforcement actions against the Petitioner. The Law Court has already determined that DHHS has the right to enforce the New Jersey support order and this court cannot re-address this issue.

[6] In his brief the Petitioner asserts that he was on public assistance at the time the Order to Withhold and Deliver was issued. (Pet. Br. 35, 37.) The Petitioner has waived this argument because it was not raised before the agency below. (See R. B; HO-2.) Under the doctrine of exhaustion of administrative remedies the Petitioner cannot raise this issue for the first time on appeal. *New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 59-60 (Me. 1988). Additionally, the Petition does not assert this issue and the Petition must state the grounds upon which relief is sought. 5 M.R.S. § 11002(2).

7

DHHS argues that the warrant requirement is generally limited to the context of criminal investigations and that the "reasonableness" requirement of the Fourth Amendment is generally satisfied by an adequate opportunity for a pre-deprivation or prompt post-deprivation hearing. (Resp. Br. 6-7.) DHHS acknowledges that the Fourth Amendment protects against the unreasonable search and seizure of the contents of safe-deposit boxes because of the reasonable expectation of privacy but argues that property contained therein is subject to seizure to satisfy a money judgment, suggesting, therefore, that the Fourth Amendment does not apply. (Resp. Br. 8-9.)

The applicable portions of the United States Constitution and the Maine Constitution protect people "against unreasonable searches and seizures" and also require that "no Warrants shall issue, but upon probable cause" and those warrants must be supported by oath or affirmation and describe with particularity the place to be searched and the persons or things to be seized. U.S. Const. amend IV; Me. Const. art. I, § 5. The Fourth Amendment ban against unreasonable search and seizure protects people, not places. *Katz v. U.S.*, 389 U.S. 347, 351 (1967). In that protection, it only protects a person's interests when there is a reasonable expectation of privacy. *Kyllo v. U.S.*, 533 U.S. 27, 33 (2001). An expectation of privacy in the contents of a safe-deposit box, implicating the protection of the Fourth Amendment, has been recognized. *U.S. v. Thomas*, 878 F.2d 383 (6th Cir. 1989) (*citing Katz v. U.S.*, 389 U.S. 347 (1967)).

The plain text of the Fourth Amendment does not link its two requirements. That is, nothing "in the text suggest[s] that warrants are required for every search or seizure, nor is the existence of a warrant a *sine qua non* for a reasonable search or seizure." *Freeman v. City of Dallas*, 242 F.3d 642, 648 (5th Cir. 2001). It is clear that a warrant, based on probable cause, is

8

required when conducting a search or seizure in the criminal context, unless one of the well-established exceptions applies. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Given that the Fourth Amendment is equally applicable to the civil context as it is in the criminal context, *Soldal v. Cook County, Il.*, 506 U.S. 56, 67 (1992), it is logical that the warrant and probable cause requirements also apply to searches and seizures in the civil context, absent an exception.

While "reasonableness" is the "ultimate" standard for whether or not a search or seizure is deemed constitutional or unconstitutional, the "warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest." *Camara v. Municipal Court of the City & County of San Francisco*, 387 U.S. 523, 539 (1967). When courts determine reasonableness they must weigh the government's need to conduct the search against the invasion of privacy that the search involves. *Id.* at 536-37.

DHHS has argued that in the context of a civil or administrative proceeding to seize property to satisfy a debt, the agency's determination of "reasonableness" is the only requirement. DHHS cites to the so-called "special needs" cases in which the Supreme Court has held that in situations "beyond the normal need for law enforcement, mak[ing] the warrant and probable-cause requirement impracticable," the court can substitute its own balancing of interests for that conceived by the Framers of the Constitution ("the Fourth Amendment Warrant and Probable-Cause Clause"). *N.J. v. T.L.O.*, 469 U.S. 325, 351 (1985)(Blackmun, J. concurring).[7] DHHS argues, applying the "special needs" doctrine, that there is also no warrant requirement in

---

[7] These cases involve searches of students by school administration, drug testing after industrial accidents and prior to federal employment, and searches of areas where there is a reduced expectation of privacy, such as, heavily regulated industries, probationers, and public employees. *See e.g Bd. of Education v. Earls*, 536 U.S. 822 (2002); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989); *Griffin v. Wisconsin*, 483 U.S. 868 (1987); *U.S. v. Burger*, 482 U.S. 691 (1987); *New Jersey v. T.L.O.*, 469 U.S. 325 (1985).

the context of civil or administrative proceedings to seize property to satisfy a debt. (Resp. Br. 7.) The cases that DHHS cites for this argument are inapposite.

First, DHHS cites *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338 (1977), as "upholding the IRS's warrantless seizure of automobiles to satisfy income tax liability." (Resp. Br. 7.) While this is a correct statement of part of the holding in this case, the "seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasion of privacy." *GM Leasing*, 429 U.S. at 351. The Supreme Court in this case also upheld the Tenth Circuit Court of Appeals' determination that the warrantless search of the petitioner's office for unidentified property and seizure of books and records from the office did violate the Fourth Amendment because the petitioner had a reasonable expectation of privacy in the property and no exception to the warrant requirement applied. *Id.* at 358. The United States argued that the intrusion was justified because the petitioner's assets were subject to seizure to satisfy a tax assessment. The court responded, "this involves nothing more than the normal enforcement of the tax laws," meaning that this was not a "special needs" case where the warrant requirement could be excused and the court substitute its own balancing of the public and private interests. *Id.* at 354. Even statutory language empowering the IRS to use "distraint and seizure by any means" was found to not authorize warrantless intrusions into privacy. *Id.* at 356-57.

At oral argument, DHHS stated that the holding of the court, finding the search and seizure of the contents of the office was a violation of the Fourth Amendment, was based on a lack of reasonableness and not because of a failure to obtain a warrant. However, it is clear that the Court found the search unreasonable because no warrant was obtained. *Id.* at 358 ("The intrusion into petitioner's office is therefore governed by the normal *Fourth Amendment* rule that except in certain carefully defined classes of cases [i.e. the "special needs" cases], a search of

10

private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (internal quotation marks removed)).

DHHS also cites footnote eighteen of this case to argue that "reasonableness" can be satisfied by an adequate opportunity for either a pre-deprivation or prompt post-deprivation hearing. (Resp. Br. 7-8.) The cases cited within this footnote all concern the "[g]overnment's right to collect taxes by summary administrative proceedings"; that is, the right to attach or seize property before liability has been adjudicated. *See Commissioner v. Shapiro*, 424 U.S. 614 (1976); *Phillips v. Commissioner*, 283 U.S. 589 (1931). When the Court states, "[t]hese cases, of course, center upon the Due Process Clause rather than the *Fourth Amendment*, but the constitutional analysis is similar and yields a like result," it refers back to the text of the opinion subject to the footnote: that the warrantless seizure of the cars without an invasion of privacy did not violate the Fourth Amendment. *G.M. Leasing Corp.*, 429 U.S. at 352. This footnote only states that when the requirements of the Due Process Clause have been met regarding a seizure, and no privacy interest is implicated, a warrantless seizure is not unconstitutional.

Second, DHHS cites *Bull v. U.S.*, 295 U.S. 247, 260 (1935), as "upholding administrative officials' warrantless seizure of debtor's property to satisfy an unpaid tax assessment." (Resp. Br. 7.) The *Bull* case was about the proper classification of income to a partnership accrued after the death of a member of the partnership. The Court provided an explication of the "system of enforcing the Government's claims for taxes" as background before engaging the question as to how the taxpayer can seek redress for overpayment. *Bull*, 295 U.S. at 259. In that explication the Court said: "The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." *Id.* at 260. Nowhere in this decision does the Court suggest that this seizure may occur without a

11

warrant when the property is protected by a privacy interest of the debtor, even if it is subject to satisfy the judgment.

Third, DHHS cites *Cinea v. Certo*, 84 F.3d 117, 124 (3rd Cir. 1996), as "rejecting a Fourth Amendment challenge to a constable's warrantless entry into residences of evicted tenants and seizure of personal property therein pursuant to writs of execution issued on money judgments for unpaid rent." (Resp. Br. 7.) The parenthetical provided by DHHS in and of itself distinguishes *Cinea* from this case. In *Cinea* the warrantless entry was made pursuant to a court issued judgment authorizing a search and seizure of property. This court order acted in the place of a warrant but safeguarded the same principles – review of the evidence by a neutral entity before approving a search or seizure. Furthermore, the plaintiffs cannot be said to have a privacy interest in the apartments because they had been evicted prior to the entry.

Lastly, DHHS argues that, although there is an expectation of privacy in the contents of a safe-deposit box, placing property in a safe-deposit box does not change its nature. (Resp. Br. 8-9.) If the property is subject to attachment outside of the safe-deposit box, it is no less subject to attachment when put into the box. *U.S. v. First Nat'l City Bank & Chemical Bank NY Trust Co.*, 388 F. Supp. 1044, 1046 (1974), *aff'd* 568 F.2d 853 (2d Cir. 1977); *Carples v. Cumberland Coal & Iron Co.*, 148 N.E. 185, 187 (N.Y. 1925). The court does not disagree with this statement. However, placing the property in a safe-deposit box <u>does</u> put it beyond the authority of the government to search the box and seize the property without a determination by a detached magistrate that sufficient probable cause for a search exists. *U.S. v. First Nat'l City Bank*, 568 F.2d 853, 858 (2d Cir. 1977); *cf. G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 352-54 (1977) (holding that the federal government's power to collect taxes does not authorize the warrantless seizure of property situated in a location where access is not otherwise available to the seizing

12

officer). The issue before the *First National City Bank* court was whether the debtor had the right to participate in the determination of whether his safe-deposit box could be searched, not whether the box could be searched without a warrant or court order. The bank had refused to comply with a notice of levy and seizure served upon it by the Internal Revenue Service. The federal district court issued an order to the bank compelling it to open the safe-deposit boxes for the government to seize any property subject to the levy. The Second Circuit concisely stated: "The 'warrant preference rule' requires no more than that a detached magistrate determine whether there is sufficient probable cause for the search. That is precisely what was done here." 568 F.2d at 858. Although the courts in this case recognized that property subject to satisfy a levy does not lose that status when it is placed in a safe-deposit box, they held that the government's right to search the safe-deposit box in order to identify and seize property subject to the levy is constrained by the warrant requirement or court order.[8]

The cases discussed above compel this court to conclude that the Fourth Amendment requires the government to obtain a warrant when entering a place where an individual has a privacy interest, even in a civil case. That is, it is not the purpose of the entry that raises the protections of the Fourth Amendment but the entry itself. *Conner v. Santa Ana*, 897 F.2d 1487, 1490-91 (9th Cir. 1990); *see also Freeman v. City of Dallas*, 242 F.3d 642, 657 (5th Cir. 2001) (Dennis, J. dissenting); *Redwood v. Lierman*, 772 N.E.2d 803, 813 (Ill. App. Ct. 2002). Still, a search or seizure is only "reasonable" when the warrant is based on probable cause to believe that the thing being sought will be discovered. *Camara*, 387 U.S. at 535). However, "probable cause" in the civil context does not require the same evidentiary showing as in the criminal

---

[8] The other case the respondent cites, *Carples v. Cumberland Coal and Iron Co.*, deals with a similar factual scenario where the bank has refused to open a safe-deposit box despite being served with a warrant of attachment. 148 N.E. 185 (N.Y. 1925). In that case the court refused to find that the appellant had a privacy interest in the safe-deposit box. *Id.* at 187. Regardless of that finding, the search was still conducted pursuant to a court order.

13

context. The Supreme Court has held that when a valid public interest justifies the contemplated intrusion then there is probable cause to issue a search warrant. *Id.* at 539. This does not compromise the probable cause standard required in the criminal context, but rather reflects the lesser weight of private interest when the risk of criminal prosecution is reduced. *Id.*

The parties have focused on the statute as applied in this case and DHHS does not directly address the constitutionality of its statutory scheme for enforcement of child support obligations. In effect, the process for enforcing a child support obligation is akin to the process for enforcing any other kind of judgment debt. *Compare* 14 M.R.S. §§ 3120-3138 (2011) *with* 19-A M.R.S. §§ 2101-2675 (2011). The authority to pursue the judgment is given to the agency and the agency has several mechanisms through which it can attain assets to satisfy the judgment. Section 2357 establishes that thirty (30) days after a decision finding the parent liable for support is sent to the parent or twenty-one (21) days after the parent receives a "notice of debt," that debt amount becomes a judgment and a lien against all property of the parent. 19-A M.R.S. § 2357(1). The statutory scheme then allows DHHS several mechanisms to enforce that judgment. The lien may be enforced through an order to seize and sell, 19-A M.R.S. § 2357(4), the commissioner may make an administrative seizure and sale of the property, 19-A M.R.S. § 2363, and DHHS may issue an order to withhold and deliver to third parties holding property belonging to the parent, 19-A M.R.S § 2358. These mechanisms are very similar to the devices available to enforce any other type of civil lien as described in Title 14, Chapter 502. The lien simply acts to put others on notice that the responsible parent does not have clear title to his or her property because there is an outstanding judgment. The lien itself does not implicate the protections of the Fourth Amendment.

14

The order to withhold and deliver is the mechanism used to access and obtain property belonging to a parent held by a third party. Although the section uses the word "property" rather than "money" it appears to be used most often to obtain the contents of bank accounts or wages due and owing. (*See* R. D-1, ¶ 3 (listing examples of "property").) Because a third party holds the property, the responsible parent is unlikely to be able to assert a privacy interest. For example, in this case, DHHS ordered Bank of America to withhold and deliver any money held in a bank account by the responsible parent. There is no privacy interest in the money held in a bank account. *Peters v. Sjoholm*, 604 P.2d 527, 529 (Wash. App. 1979); *see also U.S. v. Miller*, 425 U.S. 435 (1976) (holding that a defendant did not have a reasonable expectation of privacy in checks and deposit slips held by the bank). Therefore, Bank of America's seizure of the Petitioner's $1.00 account did not require DHHS to obtain a warrant, as it was property similarly situated to the automobiles in *GM Leasing* (i.e. subject to a levy and able to be seized without interfering with a privacy interest).

A safe-deposit box creates a different factual scenario. Although held by a third party, the parent maintains an expectation of privacy in the safe-deposit box because the bank or security company does not have access to the contents of the box. Entry into the box without authorization through a warrant or court order violates the box owner's rights against unreasonable search and seizure. Where DHHS did not have knowledge of the contents of the safe-deposit box and, in essence, conducted a search for unidentified non-exempt property, it cannot be said that the warrantless search was reasonable.

As described above, searches for the purpose of identifying and seizing property subject to the execution of a lien in a civil context does not qualify as a "special needs" case. The special needs cases are distinct from this case with regard to the severity of need for spontaneous

15

action by law enforcement.[9] Furthermore, although the respondent cites to cases stating that property cannot be secreted away by putting it in a safe-deposit box, those cases recognize the need for a warrant or court order before the search is conducted.

The court finds that the statutory scheme through which DHHS issues orders to withhold and deliver contains no constitutional infirmity. The sections of statute that the Petitioner sought review of (2357 and 2358) provide a legitimate process for executing a child support judgment. However, in this case, DHHS violated the Petitioner's Fourth Amendment rights when it searched the Petitioner's safe-deposit box without obtaining a warrant or court order to do so. The court does not find any constitutional problem with ordering a third party to withhold property from the responsible parent when there is a valid lien against the parent's property. However, once DHHS was notified that the third party held a safe-deposit box for the parent, DHHS should have come to court seeking an order to search that safe-deposit box for non-exempt property that is subject to seizure to satisfy the judgment.[10]

DHHS claims that the administrative hearing, to which the responsible parent has a right after receiving notice of the order to withhold and deliver, acts to review the reasonableness of the search and seizure. Although the safe-deposit box was not opened until after this hearing (meaning that no search had yet occurred), the hearing officer is constrained by the agency's own rules as to what issues may be addressed at the hearing. The court cannot comprehend how a review by an administrative hearing officer, with no authority to consider constitutional

[9] DHHS has not demonstrated a need for rapid action in this case. In fact, DHHS could not even tell the court if it was actually aware that the Petitioner kept a safe-deposit box that may contain property subject to levy when it issued the subject order to withhold and deliver.

[10] Alternatively, DHHS could wait-out the time period for a parent's appeal of an order to withhold and deliver. Because the procedure established in M.R. Civ. P. 80C is the only mechanism for review of an agency decision, if the parent does not appeal the order, or does not raise the constitutional issue before the administrative hearing officer to preserve the issue for appeal, the parent will have effectively consented to the search.

challenges to DHHS's actions, is in any way an evaluation of the reasonableness of DHHS's actions. Additionally, the administrative hearing officer is not a neutral party. *Camera*, 387 U.S. at 529 (*citing Johnson v. U.S.*, 333 U.S. 10, 14 (1948)) ("When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.") DHHS also suggested at oral argument that this court, in its review of the agency's action on appeal under M.R. Civ. P. 80C, is where the reasonableness of the agency's actions should be determined. However, reasonableness is to be determined before the search occurs, not afterward based on the products of the search.

    *c.    Remedy*

    The Petitioner seeks (1) review of the statutory scheme authorizing DHHS's actions, (2) an injunction against further enforcement actions against the Petitioner, and (3) return of the coin seized from his safe-deposit box. As noted above, the court has not considered the second issue because the Law Court has decisively ruled on this question and the court has determined that the statutory scheme authorizing the order to withhold and deliver is constitutional. The only remaining relief sought is return of the coin.

    Courts have broad equitable powers to create appropriate remedies for constitutional violations. *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d 637, 648 (N.D. Ohio 2010). In the criminal context, the typical remedy for an unlawful search is suppression of any inculpatory evidence obtained in the search. *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). This remedy is not itself a constitutional right but, rather, a judicially created remedy that occasionally acts as a "windfall" to a criminal defendant solely for the purpose of deterring future unconstitutional conduct. *Id* at 2433-34. Therefore, if the government had acted in good faith but still violated an individual's constitutional rights, the

17

exclusionary rule may be inappropriate as a remedy. *Id.*

Here, DHHS is not attempting to use the seized coin to prosecute Mr. Kwasnik; it is attempting to satisfy a small portion of his debt with the value of the coin. While the exclusionary rule itself is inapplicable to this civil context, the concept of a deterrent remedy that may act as a windfall to an individual is fitting. In this case there was a significant government interest in protecting the health and welfare of children, the Petitioner's rights had already been adjudicated, and there was reason to suspect that the Petitioner had assets subject to levy in the box. These facts lead the court to conclude that there was probable cause to search the safe-deposit box on which a warrant could have been based. Furthermore, there is no indication in the record on before the court, or at oral argument, that DHHS had a malicious motivation in violating the Petitioner's rights by searching the safe-deposit box without first obtaining a warrant. Rather, this violation appears to have been based on a lack of experience.[11] Although Mr. Kwasnik's rights were violated, the property seized by DHHS is subject to levy to satisfy his child support obligations.[12] Now that the existence of this coin is known and return of the coin is unlikely to have a deterrent effect on DHHS, the court concludes that it would be inappropriate to return the coin to Mr. Kwasnik.

---

[11] The Hearing Officer states that she had never encountered and Order to Withhold and Deliver involving a safe-deposit box. (R. B at 5.)

[12] Even if it could be argued that the coin is exempt property, Mr. Kwasnik failed to raise this issue in the administrative hearing and has thus waived the issue.

**The entry is:**

The Petitioner's appeal is SUSTAINED but the Respondent is entitled to retain the property seized from the Petitioner's safe-deposit box. The Respondent's Motion to Dismiss Claims against Bank of America and Motion to Exclude Additional Evidence are GRANTED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 3/19/12

Joyce A. Wheeler
Justice, Superior Court

19

Petitioner—Marek A. Kwasnik (Pro Se)

Respondent—Carlos Diaz AAG (DHHS)